674 A.2d 185

RITA BROWN, DOLORES BRUNING, ROBERT COSGROVE, ROBERT VOGT, TIMOTHY HURLEY, MICHAEL ANTHONY PERCHUN, JOHN RALEIGH, JOSEPH A. CASTAGNA, LOUIS M. MANZO AND WALTER R. LEZYNSKI, PLAINTIFFS–APPELLANTS/CROSS RESPONDENTS, v. THE CITY OF JERSEY CITY, NEW JERSEY, A MUNICIPAL CORPORATION, DEFENDANT–RESPONDENT/CROSS APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 12, 1996—Decided April 10, 1996.

Before PRESSLER, WEFING and A.A. RODRÍGUEZ, JJ.

*Stanley Van Ness* argued the cause for appellants/cross respondents (*Picco Herbert Kennedy*, attorneys; *Mr. Van Ness*, of counsel and on the brief with *Karen L. Cayci* ).

*Carol Zylbert*, Assistant Corporation Counsel, argued the cause for respondent/cross appellant (*Sean M. Connelly*, Corporation Counsel, attorney; *Ms. Zylbert*, on the brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

This controversy involves a claim by plaintiffs, a group of former and present public health officers employed by defendant Jersey City, for adjustment of their respective salaries and an award of retroactive pay consistent with *N.J.S.A.* 26:3–25.1. Plaintiffs appeal and defendant cross appeals from the summary judgment of the Law Division by which the court attempted to synthesize *N.J.S.A.* 26:3–25.1 and the New Jersey Employer–Employee Relations Act, *N.J.S.A.* 34:13A–1, *et seq.* We take a different view of the matter from that of the trial judge and the parties and, accordingly, we modify the judgment entered below.

This is the second lawsuit in the past decade by the public health officers seeking their asserted statutory salary rights. The first action was settled early in 1985, the parties agreeing both to back pay awards for prior years and to plaintiffs' base salary for 1985. Plaintiffs in this action, some of whom were also plaintiffs in the original action, assert that as of 1986, the City again failed to honor the rights accorded them by *N.J.S.A.* 26:3–25.1 and abrogated the import of the settlement agreement.

*N.J.S.A.* 26:3–25.1, upon which plaintiffs rely, provides in full as follows:

> Every health officer and every sanitary inspector, plumbing inspector, food and drug inspector, milk inspector, meat inspector and public health laboratory technician holding a license as such issued in the name of the State Department of Health, who is employed as such by any board of health, municipality or group of municipalities shall receive his or her maximum salary in their respective salary ranges, within five years from the date of his or her appointment as such health officer, inspector or public health laboratory technician.

We construed the statute in *De Hay v. West New York,* 189 *N.J.Super.* 340, 460 *A.*2d 157 (App.Div.), *certif. denied,* 94 *N.J.* 591, 468 *A.*2d 227 (1983), holding that a health officer who has served for five years is entitled to whatever the maximum salary then is for that employee's labor grade. We were not required to address in *De Hay* the effect of the two variables present in this case, namely, an increase in the maximum salary for that labor grade thereafter and the movement of the employee from the labor grade in which he or she was in at the time the right to the maximum was attained to the next higher labor grade. Both of these variables are implicated here.

In considering the effect of these variables, we first note that Jersey City is governed by the Faulkner Act, *N.J.S.A.* 40:69A–1, *et seq.* Pursuant to the amendment of *N.J.S.A.* 40:69A–43a effected by *L.* 1985, *c.* 374, the Mayor was authorized to set the salaries of all employees of administrative departments except department directors and employees whose salaries are required to be set by ordinance. *See N.J.S.A.* 40:69A–180(c). Accordingly, on February 6, 1986, the then Mayor issued an executive order fixing the minimum and maximum salaries for each of the forty labor grades

to which City employees had been assigned by title. It is important to note in this regard that as a general matter, each City employee, including these plaintiffs, is assigned, by title, to a labor grade. Each labor grade includes a number of titles. A salary range is prescribed for each labor grade. Although, as we understand the record, the public health workers had also been assigned to labor grades,[1] the Mayor, on February 18, 1986, issued a separate compensation schedule for the eight titles held by the public health officers. The schedule, retroactive to November 24, 1985, the effective date of the Faulkner Act amendment, only fixed maximum salaries for five-year or longer public health employees. It contained no salary range. Moreover, none of those stated maximum salaries exactly matched a maximum on the labor grade schedule; there were slight variations. It also appears, as found by the trial judge and not disputed by the City, that the special health officer schedule had not been submitted to the New Jersey Department of Personnel as required by *N.J.A.C.* 4A:3-4.1(a).

New salary schedules were issued by the Mayor following the initial 1986 schedules. Thus, by executive order dated May 18, 1988, a salary schedule setting a minimum-maximum range was promulgated for each of the forty labor grades for calendar years 1987 and 1988. A similar schedule was set for 1989 and 1992. No separate salary schedule was promulgated for public health workers after the first such schedule in 1986. In the meantime, the City collectively negotiated with its employee unions,[2] agreeing to across-the-board raises at least annually. Much of the difficulty here derives from the consequences of the negotiated labor contracts, at least the 1991 contract, which not only provided for flat raises for all employees for three successive years commencing with 1991, but also mandated that "[a]ny employee who surpasses

---

[1] It appears that at least as of the time this action was commenced, the public health workers had been assigned to one of five labor grades: 16, 18, 20, 23, and 31.

[2] Apparently, all but one of the appellants are union members.

maximum as a result of the increases shall have labor grade increased to encompass the raise." It was represented to us by the City at oral argument that on occasion, employees whose negotiated raises placed them above the promulgated maximums for their respective labor grades were in fact "bumped up" to the next labor grade. In other years, however, the City simply repromulgated the compensation schedule, increasing the maximum of the range for each grade by conforming it to the negotiated salary. Thus the negotiated raise would not require a change in labor grade. We are unable to determine from this record whether any of the health officers were either bumped up or, if the general compensation schedules applied to them, were entitled to be bumped up.

. We consider the parties' contentions in the light of this background. First, plaintiffs contend that they are subject to the general salary schedule and not to the separate 1986 salary schedule. We understand the judgment entered by the trial judge to be based on his concurrence with this view. That is to say, while earlier expressions of opinion by the trial judge suggested the contrary, the final judgment accords each plaintiff, five years after appointment, "no less than the maximum rate of compensation in effect for the labor grade corresponding" to his or her position. We are also satisfied that that result is correct. As we have noted, the 1986 special schedule was not submitted to the Department of Personnel. Moreover, it was not on its face a full and complete salary schedule because, as we have pointed out, it had only maximum salaries, not ranges. It appears to have been *sui generis* for that year alone, attributable perhaps to the settlement agreement of the previous year. Significantly, however, there was no special schedule at all after 1986, but only the periodic general compensation schedules setting ranges for labor grades that the public health officers shared. Those compensation schedules, moreover, expressly stated that they were applicable to all employees except department directors and those requiring salary-setting by ordinance. Plaintiffs are in neither category. Consequently, we see no reason for exempting the health officers

from the general schedules for 1987 and thereafter. They were facially covered thereby, and there is nothing to justify their exclusion.

The question then is to determine the consequence of plaintiffs' inclusion in the general salary schedule in the context of *N.J.S.A.* 26:3–25.1. To begin with we are satisfied, as was the trial judge, that the concept of "maximum" is fluid rather than fixed. That is to say, we disagree with the apparent view of the City that once a health officer has reached the maximum following his five years of service, the statutory purpose and directive has been fulfilled and there is no statutory mandate thereafter to increase the employee's salary as the salary range itself is increased. We think it evident, however, in view of our decision in *De Hay* and in further view of the statutory policy, that a health officer to whom the statute is applicable is intended to receive the maximum of his or her salary range at the time the salary is earned and paid. As we see it, the whole point of the statute is to prevent the freezing of a health officer's salary below whatever the current maximum is. Moreover, it would obviously abrogate the plain intent of the statute if a health officer's salary were frozen at whatever the maximum was five years after his appointment irrespective of how often and by how much the range thereafter increased, irrespective of what new similarly titled employees were to be paid, and irrespective of what those new employees would be entitled to five years hence. Thus we hold that as the maximum of the range increases, so does the protected health officer's salary.

We recognize that health officers receive the benefit of union-negotiated raises as well as the benefit of the statute. We reject, however, the City's argument that the multiple source of benefit compels the conclusion that the Public Employee Relations Act implicitly repealed the Title 26 entitlement. It is well settled that implied repealers are disfavored by the law and will be avoided if the two enactments can be read harmoniously and sensibly. *See Mahwah Tp. v. Bergen County Bd. of Taxation*, 98 *N.J.* 268, 486 *A.*2d 818, *cert. denied*, 471 *U.S.* 1136, 105 *S.Ct.* 2677,

86 *L.Ed.*2d 696 (1985); *Yacenda Food v. N.J. Highway Authority*, 203 *N.J.Super.* 264, 496 *A.*2d 733 (App.Div.1985); *Matter of K.L.F.*, 275 *N.J.Super.* 507, 646 *A.*2d 532 (Ch.Div.1993). We are persuaded that these two can.

Thus, on those occasions when the City responds to union-negotiated increases by congruently adjusting the maximums of the salary ranges, there is no inevitable tension at all between the collective negotiation agreement and the Title 26 provision. That is to say, by reason of that provision, the health officer is already entitled to receive the current maximum for his labor grade's salary range. If, when the increase in salary is negotiated and the maximum is concomitantly increased, the employee, simultaneously, with one raise, gets the benefit of both the contract and the statute. If, as the City asserts, the maximum is increased beyond *the negotiated raise to a level adequate to accommodate future years' increases*, the public health officer is still getting no more than the Title 26 provision dictates.

The difficulty arises as a result of the contractual bumping provision. As we understand the contention of plaintiffs, they argue that in the event they are bumped up by reason of a negotiated raise, they are immediately entitled to the maximum of the salary range for that next labor grade. They ask for too much. The trial judge concluded, and we understand plaintiffs to agree, that when a health officer is promoted by reason of a title change, the right to the maximum of the range in the new labor grade does not accrue under the statute for five years. That is clearly correct. For purposes of applying *N.J.S.A.* 26:3–25.1, we are persuaded that elevation to a higher labor grade by reason of "bumping" is tantamount to a promotion requiring the passage of five years in that labor grade before the right to the maximum accrues. In this way, the public health officer is afforded the benefit of both the Title 26 statute and the union contract in a manner that is fair both to the employer and the employee. The employee receives his or her due precisely as anticipated by the

statute but does not obtain an exaggerated benefit, and the public fisc is not unduly burdened.

We are satisfied that the foregoing holdings provide a simple and workable framework for determining the salary to which each plaintiff is entitled from 1986 forward and hence that the parties will be able to agree, with the trial court's assistance if necessary, as to each plaintiff's entitlements. In the event they are unable to do so, the trial court shall enter appropriate orders on a proof of each plaintiff's labor grade for each year, the range for that grade, the negotiated salary increase, and whatever additional information may be relevant.

The summary judgment appealed and cross appealed from is modified to the extent it is inconsistent with this opinion, and we remand for entry of a consistent judgment and such further proceedings as may be necessary. We do not retain jurisdiction.