NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2477-13T4
                      A-0107-14T1

IN THE MATTER OF
COUNTY OF ATLANTIC,

    Respondent-Respondent,

and

PBA LOCAL 243,

    Charging Party,

and

FOP LODGE 34 and PBA LOCAL 77,

    Charging Parties-Appellants.

_____

IN THE MATTER OF
TOWNSHIP OF BRIDGEWATER,

    Petitioner-Respondent,

and

PBA LOCAL 174,

    Respondent-Appellant.

_____

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **March 9, 2016** |
| **APPELLATE DIVISION** |

Argued October 28, 2015 — Decided March 9, 2016

Before Judges Alvarez, Haas, and Manahan.

On appeal from the State of New Jersey
Public Employment Relations Commission,
P.E.R.C. Nos. 2014-40 and 2015-11.

Ira W. Mintz and Steven R. Cohen argued the cause for appellants FOP Lodge 34, and PBA Local 77 in A-2477-13, and amici curiae Lodge 34, PBA Local 77, and Communications Workers of America AFL-CIO in A-0107-14 (Weissman & Mintz, LLC, and Selikoff & Cohen, P.A., attorneys; Mr. Mintz and Mr. Cohen, on the briefs).

James M. Mets and David M. Bander argued the cause for appellant PBA Local 174 in A-0107-14 and amicus curiae Professional Firefighters Association of New Jersey in A-2477-13 (Mets Schiro & McGovern, LLP, attorneys; Mr. Mets, of counsel and on the briefs; Mr. Bander and Brian J. Manetta, on the briefs).

James F. Ferguson, Atlantic County Counsel, argued the cause for respondent County of Atlantic in A-2477-13.

Don Horowitz, Acting General Counsel, argued the cause for respondent New Jersey Public Employment Relations Commission (Mr. Horowitz, attorney; Martin R. Pachman, formerly General Counsel, and Mr. Horowitz, on the briefs).

Eric M. Bernstein argued the cause for Township of Bridgewater respondent in A-0107-14 and amicus curiae in A-2477-13 (Eric M. Bernstein & Associates, LLC, attorneys; Mr. Bernstein, of counsel and on the brief; Philip G. George, on the brief).

John J. Hoffman, Acting Attorney General, attorney for amicus curiae Governor's Office of Employee Relations in A-2477-13 (Michelle Lyn Miller, Assistant Attorney General, of counsel; Todd A. Wigder, Deputy Attorney General, on the brief).

Oxfeld Cohen, P.C., attorneys for amicus curiae International Federation of Professional and Technical Engineers, Local

A-2477-13T4

195 in A-2477-13 (Arnold S. Cohen, of counsel and on the brief; Samuel Wenocur, on the brief).

Bucceri & Pincus, attorneys for amicus curiae New Jersey Education Association in A-2477-13 (Louis P. Bucceri, of counsel and on the brief; Albert J. Leonardo, on the brief).

Cynthia J. Jahn, General Counsel, attorney for amicus curiae New Jersey School Boards Association in A-2477-13 (Patrick Duncan, on the brief).

Law Offices of Craig S. Gumpel LLC, attorneys for amicus curiae New Jersey State Firefighters Mutual Benevolent Association (Craig S. Gumpel, of counsel and on the brief).

Genova Burns LLC, attorneys for amici curiae New Jersey State League of Municipalities, New Jersey Association of Counties, and New Jersey Council of County Colleges (Joseph M. Hannon, of counsel and on the brief; Allison B. Gotfried, on the brief).

Markowitz and Richman, attorneys for amicus curiae New Jersey State Lodge of the Fraternal Order of Police (Matthew D. Areman, on the brief).

Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys for amicus curiae New Jersey State PBA in A-2477-13 (Paul L. Kleinbaum, of counsel and on the brief; Marissa A. McAleer, on the brief).

The opinion of the court was delivered by

ALVAREZ, P.J.A.D.

Oral argument was conducted on these two matters back-to-back, and they are consolidated for purposes of this opinion. We reverse both Public Employment Relations Commission (PERC) final agency decisions because PERC's abandonment of the dynamic status quo doctrine was action outside the scope of its legislative mandate, which is the implementation of the New Jersey Employer-Employee Relations Act (Act), N.J.S.A. 34:13A-1 to -39.

PERC is charged with safeguarding the rights of public employees. Galloway Twp. Bd. of Educ. v. Galloway Twp. Ass'n (NJ Galloway), 78 N.J. 25, 36 (1978). It "bear[s] the dual responsibilities of adjudicating violations of the unfair practice provisions and the Act and taking all steps necessary to enforce that which the Legislature has declared to be the public policy of this State in public employment labor relations." Ibid.

In the first appeal, the Atlantic County matters, FOP Lodge 34 and PBA Local 77[1] filed separate unfair practice charges with PERC.[2] The unions alleged that Atlantic County violated the Act by, after the expiration of collective negotiation

---

[1] The organizations are the designated collective bargaining units for officers below the rank of sergeant.

[2] A third union, PBA Local 243, is not involved in the appeal.

agreements[3] (CNAs), failing to pay salary/step increments to unit members while negotiations were ongoing and the employment contract disputes were in interest arbitration. PERC dismissed the charges, disavowing the dynamic status quo doctrine, which would have required payment of the salary increments. Had PERC adhered to the longstanding doctrine, it would have held Atlantic County's decision not to pay salary/step increments an unfair labor practice. See N.J.S.A. 34:13A-5.4.

In the second appeal, the Bridgewater Township case, PERC restrained binding arbitration of Local 174's grievance, relying on its decision in the Atlantic County cases.[4] The grievance was filed to challenge the Township's failure to pay automatic salary increments to unit members after the expiration of their CNA. PERC held that, since it had abandoned the dynamic status quo doctrine, the issue of automatic salary increments after the expiration of a negotiated agreement was no longer mandatorily negotiable nor legally arbitrable. Had PERC adhered to the

---

[3] New Jersey typically employs the terms "collective negotiation" and "collective negotiation agreements," not "collective bargaining" or "collective bargaining agreements." Twp. of Franklin v. Franklin Twp. PBA Local 154, 424 N.J. Super. 369, 373 n.1 (App. Div. 2012).

[4] Local 174 is a collective bargaining unit for officers below the rank of sergeant.

doctrine, since salary is a mandatory subject of negotiation, it would have held Local 174's grievance to be arbitrable.

I.

PERC has had exclusive jurisdiction over unfair labor practice charges since 1974. See L. 1974, c. 123 (1974), codified at N.J.S.A. 34:13A-5.4; See In re Galloway Twp. Bd. of Educ. (PERC Galloway), P.E.R.C. No. 76-32, 2 N.J.P.E.R. ¶ 122B, 1976 N.J. PERC LEXIS 23 (1976), rev'd, 149 N.J. Super. 352 (App. Div. 1977), rev'd, NJ Galloway, supra, 78 N.J. 25. The following year, PERC adopted the dynamic status quo doctrine. See In re Piscataway Twp. Bd. of Educ., PERC No. 91, 1 N.J.P.E.R. 49, 50 (1975).

In Piscataway, PERC found that the employer had engaged in an unfair labor practice by unilaterally dropping employee hospitalization and medical coverage, a condition of employment, after the expiration of a CNA while negotiations were ongoing. PERC stated: "It is the generally accepted view in both the public and private sectors that an employer is normally precluded from altering the status quo while engaged in collective negotiations . . . ." Ibid. PERC defined the term "status quo" to include scheduled pay increments. Moreover, such dynamic status quo was within the scope of mandatory fair labor practices even where no CNA was in effect.

Two years later, in 1976, PERC again held that refusal to pay salary increments in accordance with an expired agreement, pending the negotiation of a successor agreement, was an unfair labor practice in violation of N.J.S.A. 34:13A-5.4(a)(1) and (5). PERC Galloway, supra, 2 N.J.P.E.R. at 8-9. In PERC Galloway, PERC observed that a level playing field for labor negotiations between a government employer and the employee bargaining unit requires that "the status quo is predictable and constitutes the terms and conditions under which the parties have been operating[.]" PERC Galloway, supra, 2 N.J.P.E.R. at 7.

Our Supreme Court affirmed the PERC Galloway decision in part based on the application of N.J.S.A. 18A:29-14. The statute bound school boards to salary schedules "for a period of two years from the effective date of such policy[,]" and in that case the second year fell in the school term in which the Board was refusing to pay salary increments. Because the Board did not pay salary increments for the second year, it violated the "statutory compulsion." Id. at 52. NJ Galloway, supra, 78 N.J. at 51-52. The Court, by way of dictum, also endorsed PERC's reliance on the doctrine of dynamic status quo in its decision. Id. at 50-51.

In its discussion, the Court cited <u>NLRB v. Katz</u>, 369 <u>U.S.</u> 736, 743-47, 82 <u>S. Ct.</u> 1107, 8 <u>L. Ed.</u> 2d 230 (1962), for the proposition that unilateral change in the status quo "frustrate[s] the 'statutory objective of establishing working conditions through bargaining.'" <u>Id.</u> at 48 (citing <u>Katz</u>, <u>supra</u>, 369 <u>U.S.</u> at 744, 84 <u>S. Ct.</u> at 1112, 8 <u>L. Ed.</u> 2d at 236). The Court drew a parallel between that principle and <u>N.J.S.A.</u> 34:13A-5.3. The statute stated then as it does now, that "new rules or modifications of existing rules governing working conditions" should only be implemented when they are the product of negotiations:

> Our Legislature has also recognized that the unilateral imposition of working conditions is the antithesis of its goal that the terms and conditions of public employment be established through bilateral negotiation and, to the extent possible, agreement between the public employer and the majority representative of its employees. It has incorporated a rule similar to that of <u>Katz</u> in . . . <u>N.J.S.A.</u> 34:13A-5.3.
>
> [<u>NJ Galloway</u>, <u>supra</u>, 78 <u>N.J.</u> at 48.]

Since compensation is an important condition of employment,

> the unilateral denial of that increment would constitute a modification thereof without the negotiation mandated by <u>N.J.S.A.</u> 34:13A-5.3 and would thus violate <u>N.J.S.A.</u> 34:13A-5.4(a)(5). Such conduct by a public employer would also have the effect of coercing its employees in their exercise of the organizational rights guaranteed them by the Act because of its inherent repudiation

of and chilling effect on the exercise of their statutory right to have such issues negotiated on their behalf by their majority representative.

[Id. at 49.]

Eighteen years later, in Board of Education Township of Neptune v. Neptune Township Educational Association, 144 N.J. 16 (1996), the Court acknowledged PERC's longstanding adherence to the dynamic status quo doctrine, and the adherence to the doctrine in "most jurisdictions[.]" Id. at 22-23.

The Court observed, however, that "there is less unanimity in applying that rule to the public sector." Ibid. When Galloway was written, N.J.S.A. 18A:29-4.1 authorized school boards to adopt salary schedules for full-time teaching staff for a maximum of two years. At the time Neptune was written, the statute had been amended to allow increments in "one, two or three year" steps. Supra, 144 N.J. at 30. The Court found the statute effectively preempted labor law. Id. at 29.

In Neptune, the Court clarified that salary increments could not be paid to teachers after the expiration of the salary schedule negotiated between the school board and the union because it was prohibited by statute, id. at 30-31, and because no recoupment could be obtained from a tenured public employee, id. at 33-34. The latter point was important because recoupment could be obtained from other non-tenured public employees, thus

limiting the potential impact of payments of increments during periods in which a CNA was not in effect on a governmental entity's budget. Should the parties ultimately negotiate a different schedule of payments that resulted in an overpayment during the time the CNA was expired but increments paid, the overpayments could be "recouped."

In the context of the newly decided Abbott v. Burke, 136 N.J. 444 (1994), which mandated the equalization of school funding across the state, the Neptune Court concluded that N.J.S.A. 18A:29-4.1 was enacted "to allow schools to properly manage their budgets in conformance with the New Jersey Constitution and current economic realities." Supra, 144 N.J. at 28-29. The Court disavowed a reading of NJ Galloway that relied on the dynamic status quo doctrine. Id. at 31-32.

Despite the disavowal, the Court also specified that the salary schedule limit found in N.J.S.A. 18A:29-4.1 did not apply to non-teaching staff members. Neptune, supra, 144 N.J. at 34. In other words, despite the weighty school funding concerns addressed in Abbott, and the potential negative effect of automatic increases on a school budget, the Neptune Court allowed non-teaching employees to benefit from the dynamic status quo doctrine and collect increments in salaries at the expiration of their CNAs. See ibid.

PERC thereafter decided that because of the potential negotiating difficulties resulting from mixed bargaining units, in which members would be subject to different rules depending on whether they were teachers or non-teachers, Neptune's holding would be extended to non-teaching members included in a bargaining unit with teachers. In re East Hanover Bd. of Educ., PERC No. 99-71, 25 N.J.P.E.R. ¶ 30052 1999 N.J. PERC LEXIS 12 (1999), aff'd, No. A-4226-98 (App. Div. Apr. 10, 2000), certif. denied, 165 N.J. 489 (2000).

Appellate review of agency decisions is deferential. In re Hunterdon Cnty. Bd. of Chosen Freeholders, 116 N.J. 322, 328 (1989). Our inquiries are limited to: (1) whether the agency followed the law; (2) whether the agency's decision is supported by substantial evidence in the record; and (3) whether in applying the law to the facts, the agency reached a supportable conclusion. City of Jersey City v. Jersey City Police Officers Benev. Ass'n, 154 N.J. 555, 567 (1998); Morris Cnty. Sheriff's Office v. Morris Cnty. Policeman's Benev. Ass'n, Local 298, 418 N.J. Super. 64, 74-75 (App. Div. 2011).

As to the review of PERC decisions, we have said:

> PERC is charged with administering the New Jersey Employer-Employee Relations Act (Act), N.J.S.A. 34:13A-1 to -29, and its interpretation of the Act is entitled to substantial deference. Appellate courts "'will not upset a State agency's

determination in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, *or that it violated a legislative policy expressed or implicit* in the governing statute.'" "Although an agency's 'interpretation of the statute it is charged with administering . . . is entitled to great weight,' . . . [appellate courts] will not yield to PERC if its interpretation is 'plainly unreasonable, contrary to the language of the Act, or subversive of the Legislature's intent.'"

PERC's interpretation of the law outside of its charge is entitled to "no special deference." Moreover, deference is not afforded when PERC's interpretation gives a provision of the Act greater reach than the Legislature intended, and PERC must follow judicial precedents interpreting the Act.

[Commc'ns Workers of Am., Local 1034 v. State Policemen's Benev. Ass'n, Local 203, 412 N.J. Super. 286, 291 (App. Div. 2010) (alteration in original) (citations omitted).]

The issue presented in these appeals is one of law: whether PERC can summarily reverse the dynamic status quo doctrine in order to advance the legislative goal embodied in the two percent tax levy cap, N.J.S.A. 40A:4-45.44 to -45.47. Our review is de novo. Maeker v. Ross, 219 N.J. 565, 574-75 (2014); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

In the Atlantic County matters, PERC adopted and incorporated the hearing examiner's findings of fact. However, because it abandoned the dynamic status quo doctrine, it rejected the examiner's decision in favor of both bargaining units.

It was undisputed that the County's practice for many years had been to pay salary increments while a new agreement was negotiated, pursuant to the schedule contained in the expired CNA. It is common for contracts between public employers and employees to expire long before new ones are negotiated. Local 77's CNA explicitly provided for this eventuality by stating: "All provisions of this Agreement will continue in effect until a successor Agreement is negotiated." Article XIX, "Duration and Termination."

During the course of the hearing, County employees testified that law enforcement salary increments were between approximately five and six percent per year. If paid, in order to meet the two percent tax levy cap, some adjustment would have to be made to other budget items.

Despite adopting the hearing examiner's findings of fact, PERC disagreed with his conclusion that the parties' CNAs compelled salary step increments beyond the expiration of the

agreements. PERC found instead that "there is not one word in any of the agreements by which the parties agreed to continue to provide incremental increases beyond the termination date of the agreements." PERC made no mention that both CNAs were negotiated assuming the dynamic status quo doctrine applied.

PERC began the analysis in its decision by discussing the 2010 tax levy cap. It observed that the County had demonstrated a decrease in its ratable base, as a result of which it had been compelled to cut expenditures by reducing public services and projects, by employee furloughs, and similar measures.

PERC further observed that the County's efforts had enjoyed great success, and that it carried actual budget surpluses in 2010 and 2011, maintained its good bond rating, and limited its overall budget growth to under two percent. After this discussion, PERC proceeded to consider the "continuing propriety of what is known as the dynamic status quo doctrine."

PERC's analysis also referenced Piscataway, PERC Galloway, and Neptune, acknowledging adherence to the doctrine since 1975. The opinion then stated that PERC had the authority to modify, or even abandon doctrines it created. It identified two earlier

cases, one decided in 2011 and other in 2012, in which it deviated from the dynamic status quo doctrine.[5]

Without reference to the record, and contrary to the rationale it had employed since <u>Piscataway</u> in 1974 that the dynamic status quo doctrine maintained a level playing field for labor negotiations, PERC continued: "a post expiration requirement that employers continue to pay and fund a prior increment system creates myriad instabilities in the negotiations process." PERC next referred to changing economic conditions, and asserted that governmental budgetary constraints trump labor considerations. PERC's opinion closed with this statement:

> [W]e find that the dynamic status quo no longer fulfills the needs of the parties in that it serves as a disincentive to the prompt settlement of labor disputes, and disserves rather than promotes the prompt resolution of labor disputes. While public employers will continue to be bound by the

---

[5] <u>Bloomfield Bd. of Educ.</u>, P.E.R.C. No. 2011-055, 37 <u>N.J.P.E.R.</u> ¶ 2 2011 N.J. PERC LEXIS 79 (2011); <u>State Operated School Dist. of Paterson</u>, P.E.R.C. No. 2012-3, 38 <u>N.J.P.E.R.</u> ¶ 33 2011 N.J. PERC LEXIS 118 (2011). Both opinions relate to interim relief. In the first, PERC declined to compel salary increments during negotiations because the payments could not be recouped. In the second case, PERC declined to apply the dynamic status quo doctrine to a dispute in a financially struggling school district because "after weighing the relative hardship to the parties and the harm to the public interest, interim relief is not appropriate and the dynamic status quo should not be applied in this case." <u>State Operated School Dist. of Paterson</u>, 2011 N.J. PERC LEXIS at 9.

> strictures of maintenance of the status quo,
> that will be defined as a "static" rather
> than a dynamic status quo.

Therefore, PERC rejected the hearing examiner's decision because he applied the dynamic status quo doctrine and "for the reasons set forth above[,]" and dismissed the unfair practice charges. This appeal followed.

We begin our analysis with N.J.S.A. 34:13A-16.7 [and related statutes], enacted in 2010, which cap interest arbitration salary growth at two percent. The effective life of N.J.S.A. 34:13A-16.7 was recently extended to 2017. This cap, limited to interest arbitration, is the Legislature's link between the Act and the two percent tax levy cap or efforts at controlling the size of municipal budgets.[6] It is significant because in New Jersey, interest arbitration is compulsory. See N.J.S.A. 34:13A-16. It hardly needs to be said that had the Legislature intended to limit salary growth in other areas not affected by the interest arbitration cap, it clearly could have done so. And its silence is meaningful:

---

[6] In N.J.S.A. 34:13A-16(g)(6), an element, among many, arbitrators must take into account in resolving salary negotiations is the effect of an award on the employers' budget. Similarly, in N.J.S.A. 34:13A-16.8(e)(1), the Interest Arbitration Task Force is directed to, as part of its charge, "study the effect and impact of the arbitration award cap on local property taxes."

> [T]he fact that the Legislature has not acted in response to an agency's interpretation or practice is "granted great weight as evidence of its conformity with the legislative intent." Malone v. Fender, 80 N.J. 129, 137, 402 A.2d 240 (1979) (citing Lavitz v. Civil Serv. Comm'n, 94 N.J. Super. 260, 266, 227 A.2d 722 (App. Div. 1967)); see also Cedar Cove, Inc. v. Stanzione, 122 N.J. 202, 212, 584 A.2d 784 (1991) ("The meaning ascribed to legislation by the administrative agency responsible for its implementation, including the agency's contemporaneous construction, long usage, and practical interpretation, is persuasive evidence of the Legislature's understanding of its enactment." (citing Malone, supra, 80 N.J. at 137, 402 A.2d 240)).
>
> [Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist., Monmouth Cnty., 199 N.J. 14, 24-25 (2009).]

The Legislature could have enacted additional limits by further amendments. It did not. See, e.g., Bd. of Educ. of Borough of Alpha, Warren Cnty. v. Alpha Educ. Ass'n, 190 N.J. 34, 47-48 (2006) (noting that Legislature overruled Supreme Court's ruling in Camden Bd. of Educ. v. Alexander, 181 N.J. 187, 203-07 (2004), in part, by amending N.J.S.A. 34:13A-5.3, effective Jan. 12, 2006, to set forth a presumption in favor of arbitration).

PERC's decision, undertaken in an area in which the Legislature did not act, was driven by the tax levy cap, concerns regarding government budgets, and not the Act. The two percent tax levy cap is beyond PERC's agency mandate. Concerns

regarding budgets are not a primary consideration when the agency safeguards the rights of public employees. "PERC's interpretation of the law outside of its charge is entitled to 'no special deference.'" Local 1034, supra, 412 N.J. Super. at 291.

PERC is charged with administering the Act and its interpretation of the Act is entitled to substantial deference. Its interpretation and implementation of laws, and primary consideration of goals outside its charge, however, is not. Local 1034, supra, 412 N.J. Super. at 291. In these cases, PERC filled in a gap it did not have the authority to fill.

Contrary to PERC's conclusion, there is no absolute inconsistency between the tax levy cap statute and the dynamic status quo doctrine because the employer is free to adjust and balance its budget, if necessary, from other expenditures. Additionally, employers have the capacity, with non-tenured employees, to recoup increments.

In fact, the interest arbitration statute's legislative history, L. 2010, c. 105, explicitly states that the Legislature did not intend to place a cap on negotiated agreements. See Assembly Law & Public Safety Comm. Statement to Assembly Comm. Substitute for A. 3393 (Dec. 9, 2010) ("[A]greements arrived at through independent negotiation between the parties, and

agreements reached with the assistance of a mediator or factfinder are not subject to the contractual cap.").

Essentially, PERC found that the cost-saving impetus behind the tax levy cap and the dynamic status quo doctrine conflicted, and on the balance gave greater weight to the tax cap statute. By doing so, it undermined its legislative mandate as embodied in the Act.

"When two statutes may stand together, each governing its own sphere of operation, there is no inconsistency from which an intent to repeal may be inferred." Jackson Twp. Bd. of Educ. v. Jackson Educ. Ass'n ex rel. Scelba, 334 N.J. Super. 162, 171 (App. Div.), certif. denied, 165 N.J. 678 (2000). See also Brown v. City of Jersey City, 289 N.J. Super. 374, 379 (App. Div. 1996) ("It is well settled that implied repealers are disfavored by the law and will be avoided if the two enactments can be read harmoniously and sensibly."). "Evidence of statutory incompatibility reflecting a legislative intention to supplant a prior law must be clear and compelling." Grzankowski v. Heymann, 128 N.J. Super. 563, 568 (App. Div. 1974).

Nor do we agree with PERC that it was free to discard the doctrine as an act of mere policymaking. PERC has broad authority to

> make policy and establish rules and
> regulations concerning employer-employee

relations in public employment relating to dispute settlement, grievance procedures and administration including enforcement of statutory provisions concerning representative elections and related matters and to implement fully all the provisions of this act.

[N.J.S.A. 34:13A-5.2.]

See also N.J.A.C. 19:10-1.1 to 19:19-5.2 (PERC regulations); Galloway, supra, 78 N.J. at 33 (PERC "is given certain statutory powers to fulfill its delegated duty as a regulatory body in the field of public employment labor relations. These include legislation (i.e., rule making), investigation, prosecution and adjudication.").

And PERC may amend its regulations "to adapt to changing circumstances and conditions," Glukowsky v. Equity One, Inc., 180 N.J. 49, 67 (2004), cert. denied, 543 U.S. 1049, 125 S. Ct. 864, 160 L. Ed. 2d 770 (2005), subject to compliance with the Administrative Procedure Act, N.J.S.A. 52:14B-1 to -15, and due process requirements. In re Provision of Basic Generation Serv. for Period Beginning June 1, 2008, 205 N.J. 339, 347 (2011); In re N.J.A.C. 7:1B-1.1 et seq., 431 N.J. Super. 100, 115-16 (App. Div.), certif. denied, 216 N.J. 8 (2013).

But the dynamic status quo doctrine is neither a regulation nor a policy statement. It is an interpretation of N.J.S.A. 34:13A-5.3, which PERC developed when assessing unfair labor

practice charges, in fulfilling its adjudicative function pursuant to N.J.S.A. 34:13A-5.4(c). See Neptune, supra, 144 N.J. at 23 (PERC "has interpreted the Act to require a dynamic status quo, including the payment of increments.") (emphasis added); Galloway, supra, 78 N.J. at 48-49 (Legislature has "recognized that the unilateral imposition of working conditions is the antithesis of its goal that the terms and conditions of public employment be established through bilateral negotiation and, to the extent possible, agreement between the public employer and the majority representative of its employees"; and "If a scheduled annual step increment . . . is an 'existing rul[e] governing working conditions,' the unilateral denial of that increment would constitute a modification thereof without the negotiations mandated by N.J.S.A. 34:13A-5.3 and thus would violate N.J.S.A. 34:13A-5.4(a)(5)") (emphasis added).

Furthermore, the parties relied on the doctrine in negotiating their CNAs. By altering its course, PERC undermined the parties' legitimate expectations based on their negotiations and, as to at least Local 77, the actual employment contract. See, e.g., Camden Bd. of Educ., supra, 181 N.J. at 195 ("As a general matter, legislative and other regulatory enactments are 'a silent factor in every contract[, and p]arties in New Jersey are likewise presumed to have contracted with reference to the

existing law.'" (alteration in original) (quoting <u>Silverstein v. Keane</u>, 19 <u>N.J.</u> 1, 13 (1955)), <u>superseded by statute on other grounds as explained in</u> <u>Bd. of Educ. of Alpha</u>, <u>supra</u>, 190 <u>N.J.</u> at 48).

Finally, PERC wrongly assumed that government employers cannot negotiate to avoid paying salary increments after the lapse of CNAs. The employer also has the option, when engaged in new negotiations, to recoup salary increments in a new contract.

An additional consideration is that we are obliged to follow the discussion in <u>NJ Galloway</u> of the dynamic status quo doctrine. It is well-established that "an expression of opinion on a point involved in a case, argued by counsel and deliberately mentioned by the court, although not essential to the disposition of a case . . . becomes authoritative[] when it is expressly declared by the court as a guide for future conduct." <u>State v. Rose</u>, 206 <u>N.J.</u> 141, 183 (2011). In other words, even if the Court's analysis in <u>NJ Galloway</u> was no more than dictum unnecessary to the ultimate ruling applying <u>N.J.S.A.</u> 18A:29-4.1, we must follow it.

"[A]s an intermediate appellate court, we consider ourselves bound by carefully considered dictum from the Supreme Court." <u>State v. Breitweiser</u>, 373 <u>N.J. Super.</u> 271, 282-83 (App.

Div. 2004), <u>certif. denied</u>, 182 <u>N.J.</u> 628 (2005). Even in <u>Neptune</u>, the Court in effect sanctioned the doctrine because it would be applied to non-teaching staff members in the bargaining unit.

Here, the hearing examiner concluded in both cases that nonpayment of the increments would constitute an unfair labor practice under <u>N.J.S.A.</u> 34:13A-5.4(a)(1) and (5). We agree. We therefore reverse.

### III.

Once informed of PERC's decision in the matter of <u>County of Atlantic</u>, the Township's administrator notified Local 174 that, based on that opinion, "no step increases are to be granted to any Township employee unless a contract agreement is in place." As a result, Local 174 filed a grievance alleging the Township violated the parties' CNA, past practice, and the covenant of good faith and fair dealing. Local 174 submitted a request to PERC for grievance arbitration and the Township filed a scope of negotiations petition, seeking restraint of the grievance arbitration.

Local 174's CNA expired December 31, 2012. It included the following term: "This agreement shall remain in full force and effect during collective negotiations between the parties beyond the date of expiration set forth herein until the parties have

mutually agreed on a new agreement." The hearing examiner found this provision to mean the employer agreed to salary increments even after the expiration of a CNA.

The grievance arbitration resulted in an award in favor of Local 174. That award was confirmed by the Law Division, pursuant to statute, on July 9, 2014. See N.J.S.A. 2A:24-7.

Over a month after the grievance arbitration award was confirmed, on August 14, 2014, PERC decided the Township's scope of negotiations petition, belatedly granting the Township's request for restraint of binding arbitration. PERC held the issue was "whether the subject matter in dispute is within the scope of collective negotiations." It noted that the scope of negotiations for police and fire officials "is broader than for other public employees because N.J.S.A. 34:13A-16 provides for a permissive as well as a mandatory category of negotiations."

After discussion of its Atlantic County decision, and the contentions of each of the parties, PERC stated:

> [W]e find that the issue of automatic movement on a salary guide after a contract has expired is not a term and condition of employment and therefore not mandatorily negotiable and legally arbitrable. We acknowledge that the issues of compensation and advancement on a salary guide are generally mandatorily negotiable and legally arbitrable issues. . . . In this case, our inquiry extends beyond those issues. The precise issue herein concerns automatic advancement on a salary guide after the

> expiration of a contract, and whether such advancement continues to be a term and condition of employment. We find that the answer to this question is no.

Referring to its decision in Atlantic County, PERC added the following: "Given that the issue herein fails to qualify as a term and condition of employment it is not mandatorily negotiable and legally arbitrable and we grant the Township's request for a restraint of arbitration."

The record does not offer any explanation for the chronology of events, i.e., that the arbitration award was made and confirmed before PERC issued its scope of negotiations ruling. Theoretically, the decision is therefore moot. Caput Mortuum, L.L.C. v. S&S Crown Servs., Ltd., 366 N.J. Super. 323, 330 (App. Div. 2004) ("A case is moot if the disputed issue has been resolved, at least with respect to the parties who instituted the litigation.").

We nonetheless address the issue because the scope of negotiations petition may be viewed independently from the grievance. PERC, by virtue of the Township's inquiry, was required to rule on whether the subject matter of dispute was within the scope of collective negotiations. See Ridgfield Park Educ. Ass'n v. Ridgfield Park Bd. of Educ., 78 N.J. 144, 154 (1978). PERC has "primary jurisdiction to make a determination on the merits of the question whether the subject matter of a

particular dispute is within the scope of collective negotiations." Ibid. This appeal raises an issue of some public importance, having the potential to recur. See State v. State Troopers Fraternal Ass'n, 134 N.J. 393, 397 (1993); Morris Cnty. Sheriff's Office, supra, 418 N.J. Super. at 73-74.

We employ the same standard of review as we did in Atlantic County. Our review is deferential only if PERC's interpretation of the law relates to its charge to implement the Act. Local 1034, supra, 412 N.J. Super. at 291. We do not reverse unless the State agency decision is shown to be arbitrary, capricious, or unreasonable, lacking fair support in the evidence, or violative of a legislative policy expressed or implicit in the governing statute. Ibid. We ask: (1) whether the agency followed the law; (2) whether the agency's decision is supported by substantial evidence in the record; and (3) whether in applying the law to the facts, the agency reached a supportable conclusion. City of Jersey City, supra, 154 N.J. at 567; Morris Cnty. Sheriff's Office, supra, 418 N.J. Super. at 74-75.

These standards apply to scope of negotiations rulings which are reviewed for arbitrariness or capriciousness. See, e.g., City of Jersey City, supra, 154 N.J. at 567-68; In re Hunterdon Cnty., supra, 116 N.J. at 328-30; Twp. of Franklin, supra, 424 N.J. Super. at 377-78.

Public employees have a constitutional right to engage in collective negotiations. N.J. Const., art. I, ¶ 19; Council of N.J. State Coll. Locals v. State Bd. of Higher Educ., 91 N.J. 18, 25-26 (1982). Their majority representative is authorized to negotiate "terms and conditions of employment" on their behalf. N.J.S.A. 34:13A-5.3. However, "the scope of negotiations in the public sector is more limited than in the private sector" due to the government's "special responsibilities to the public" to "make and implement public policy." In re IFPTE Local 195 v. State, 88 N.J. 393, 401-02 (1982) (citations omitted). Salary is a mandatorily negotiable term and condition of employment. In re Hunterdon Cnty., supra, 116 N.J. at 331-32; In re IFPTE Local 195, supra, 88 N.J. at 403; Twp. of Franklin, supra, 424 N.J. Super. at 379.

In a 2012 decision, while referring to the two percent tax levy cap, PERC held "because issues of compensation are mandatorily negotiable and the joint employers have not shown that paying the increments would be preempted by any specific statute or regulation, we deny the request for a restraint of binding arbitration." In re Cnty. of Morris, PERC No. 2013-19, 39 N.J.P.E.R. 181 (¶ 56 2012). Citing to its Atlantic County decisions and contrary to its decision in In re County of Morris, PERC determined in this case that salary increments are

not a negotiable term or condition of employment during a period when no CNA is in effect.

We reiterate that the fiscal health of municipalities and tax rates are not within PERC's charge. PERC cannot abandon the adjudicative doctrine it long ago adopted, rooted in parallel federal law. To the extent the dynamic status quo doctrine must be changed, it is the Legislature's prerogative to do so. Absent such a step, it remains an item open to negotiation between employer and bargaining unit.

The Township argues on appeal that PERC's decision accords with the legislative adoption of the two percent cap on police and fire interest arbitration awards. See N.J.S.A. 34:13A-16.7 (extended to 2017 by L. 2014, c. 11). But, as we have said, that legislation was not extended to other labor disputes. In this case, the parties were attempting to negotiate a successor agreement but had not turned to interest arbitration, the only arena in which the Legislature acted.

Thus, there is no basis to conclude that N.J.S.A. 34:13A-16.7 preempts negotiation over salary increments payable during a CNA, or in the interim period between expiration of a CNA and negotiation or arbitration of a successor agreement. See, e.g., Council of N.J. State Coll. Locals, supra, 91 N.J. at 30 (a regulation "must fix a term and condition of employment,

and it must so provide expressly, specifically and comprehensively in order to foreclose otherwise required employer-employee negotiations on the subject matter"); In re IFPTE Local 195, supra, 88 N.J. at 403-04 (alteration in original) (quoting State v. State Supervisory Emps. Ass'n, 78 N.J. 54, 80 (1978)) ("Negotiation is preempted only if the 'statutory or regulatory provisions . . . speak in the imperative and leave nothing to the discretion of the public employer.'").

Accordingly, we reverse PERC's decision on the scope of negotiations petition. Salary is a mandatory subject of negotiation, and the Township's decision not to pay automatic salary increments in accordance with the earlier CNAs and past practice was indeed arbitrable. NJ Galloway, supra, 78 N.J. at 36.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION