**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2538-21

UNITED STEEL, PAPER AND
FORESTRY, RUBBER,
MANUFACTURING ENERGY,
ENERGY, ALLIED INDUSTRIAL
AND SERVICE WORKERS
INTERNATIONAL UNION,
AFL-CIO-CLC, for itself and for
its LOCAL 4-406,

     Plaintiff-Respondent,

v.

OCEAN COUNTY UTILITIES
AUTHORITY,

     Defendant-Appellant.

_____

Argued October 25, 2023 – Decided December 12, 2023

Before Judges Mayer and Paganelli.

On appeal from the Superior Court of New Jersey, Law
Division, Ocean County, Docket No. L-2608-21.

Ryan T. Yost argued the cause for appellant (Haines
and Yost, attorneys; Ryan T. Yost, on the briefs).

David Tykulsker argued the cause for respondents (David Tykulsker and Associates, attorneys; David Tykulsker, on the brief).

PER CURIAM

Defendant Ocean County Utilities Authority (OCUA) appeals from a March 5, 2022 order granting plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO on behalf of its Local 4-406's (United Steel) order to show cause (OTSC) confirming an arbitration award and denying OCUA's application to vacate the arbitration award.

Since the arbitrator erred by exceeding his scope of authority, as defined by the Public Employment Relations Commission (PERC) and rendered his award without evidential support, the judge erred in confirming the arbitrator's award. Accordingly, we vacate the judge's order, vacate the arbitration award and remand the matter to arbitration expressly limited to the issue permitted in PERC's decision of June 24, 2021.

I.

We glean the procedural and factual history from the records of PERC; the arbitration; and the OTSC hearing.

A-2538-21

OCUA is a public employer and United Steel represents "all of [OCUA]'s full-time and part-time craft employees and production and maintenance employees."  OCUA and United Steel are parties to an Agreement.[1]

The Agreement contains a "Grievance Procedure."  A grievance "means any controversy arising over the interpretation, application or alleged violations of th[e] Agreement, or policies or administrative decisions which affect terms and conditions of employment, and which may be raised by . . . [United Steel] on behalf of an individual or a group of individuals."

The grievance procedure involves a three-step process.  If "the grievance is not resolved to [United Steel's] satisfaction," in steps one and two, and the grievance "involve[s] the express terms of th[e] Agreement," United Steel may "submit the grievance for binding arbitration . . . ."

Under step three:

> [g]rievances must . . . relate solely to subject matter(s) within the required scope of negotiations as determined by PERC . . .; and by way of remedy do not seek a result inconsistent with statute, administrative regulation or decisional law, inconsistent with [OCUA]'s management prerogatives set forth generally and specifically in the Management Rights . . ., or which would significantly interfere with such management prerogatives.

---

[1]  In the records, the Agreement is referred to as a Collective Bargaining Agreement (CBA) and a Collective Negotiated Agreement (CNA).

"The arbitrator expressly has no authority to modify, add to, subtract from, or in any way whatsoever alter the provisions of th[e] Agreement, and shall be expressly bound by the considerations . . . above."

Appendix A to the Agreement is entitled "Registered Apprenticeship Standards."  Under the standards:

> [the OCUA] must conduct, operate, and administer th[e] program in accordance with all applicable provisions of Title 29 Code of Federal Regulations (CFR) parts 29 and 30, and all relevant guidance issued by the Office of Apprenticeship (OA).  [OCUA] must fully comply with the requirements and responsibilities listed below and with the requirements outlined in the documents "Requirements for Apprenticeship Sponsors Reference Guide."

Section I, paragraph G of the Standards, Ratio of Apprentices to Journeyworkers – 29 CFR § 29.5(b)(7), provides "[e]very apprenticeship program is required to provide an apprenticeship ratio of apprentices to journeyworkers for adequate supervision."  Further, Section I, paragraph I 3 – 29 CFR § 30.10, provides "[e]very sponsor will adopt selection procedures for their apprenticeship programs consistent with the requirements set forth in 29 CFR § 30.10(b)."

The following factual background formed the basis for the parties' dispute:

> [i]n July 2020, OCUA posted for a Vehicle Mechanic. On October 19, 2020, HR Manager . . . notified Chief Steward . . .that a [journeyman] was starting that day.

4

> To ensure the new employee was a . . . journeyman . . . Chief Steward . . . requested the credentials of the new employee. OCUA provided the Chief Steward with the resume and diploma . . . . Upon examination of these documents it was determined [the new employee] did not have all the required related instruction . . . . Additionally, it was difficult to determine from the documents . . . if [the new employee] completed the necessary 8000 hours . . . in the necessary disciplines required to be paid at top rate of the CBA.
>
> On October 23, 2020, HR Manager . . . emailed . . . Chief Steward . . . that OCUA would be putting up a posting for journeyman mechanics.

United Steel filed a grievance alleging:

> The [OCUA] fail[ed] to maintain the agreed to ratio of apprentice(s) to journeyworkers.
>
> The [OCUA] refuse[d] to follow the agreed selection procedure to select apprentices.
>
> The [OCUA] . . . hired new employees as journeyworkers who ha[d] not completed a D[epartment] O[f] L[abor] [DOL] registered apprenticeship program.

As a remedy, United Steel sought "[t]o cancel the current job posting for a [journeyman], post the position as an apprentice and follow the agreed to selection procedure."

The parties, having failed to satisfactorily resolve the grievance, proceeded to arbitration. During the pendency of the arbitration, OCUA "filed

5

a scope of negotiations petition [with PERC], seeking a restraint of binding arbitration of [the] grievance."

PERC issued the following ruling:

> The request of the [OCUA] for a restraint of binding arbitration is denied to the extent that . . . United Steel['s] . . . grievance challenges the [OCUA]'s alleged failure to adhere to the procedural DOL Apprenticeship Standards incorporated into Appendix A of the CNA. The [OCUA]'s request for a restraint of binding arbitration is granted to the extent that the [United Steel]'s grievance challenges the [OCUA]'s decisions to post job openings for journeyworkers and hire journey[]workers who have not completed a DOL registered apprenticeship program.

Thereafter, the arbitrator opined that he could:

> still issue an award as long as [his] award d[id] not have the effect of establishing a provision of a negotiated agreement that is inconsistent with the law and . . . issue an award of the grievance issue that deals with [OCUA]'s alleged violation to adhere to the procedural DOL apprenticeship standards incorporated into Appendix A but not the grievance issue concerning the Authority's decision to post job openings for journeyworkers or if they hire a journeyworker who has not completed the DOL apprenticeship program.

The arbitrator requested that the parties "structure . . . post-hearing briefs to the [OCUA's] alleged violation to adhere to the procedural DOL apprenticeship standards incorporated into Appendix A in accordance with the PERC ruling."

Ultimately, the arbitrator's award ordered OCUA "to cease and desist any further violations of the Apprenticeship Standards with respect to procedures for selecting applicants, the agreed ratio of apprentices to journeyworkers and from placing any employee as journeyworker who had not completed a DOL Registered Apprenticeship Program."

United Steel filed an OTSC to confirm the arbitrator's award. N.J.S.A. 2A:24-7. OCUA filed an answer and a counterclaim to vacate the award. N.J.S.A. 2A:24-8.

The judge confirmed the arbitrator's award finding:

> . . . the body of the [A]greement, when you talk about reasonably debatable, I think . . . its clear that the [OCUA] has a right to hire whoever they want. However, the [Agreement] determines how that person is to be paid and also, how he is to be trained after he is hired. [The arbitrator] ordered that . . . – this hire . . . be as an apprentice to be placed in the appropriate hour rate. And I find that the arbitrator's award should be upheld and I'm going to enter an [o]rder in accordance with that.

## II.

"Judicial review of an arbitration award is very limited." Strickland v. Foulke Mgmt. Corp., 475 N.J. Super. 27, 38 (App. Div. 2023) (quoting Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017)). We defer to arbitration awards and vacate them "only when it has been shown that a statutory basis

7

justifies that action." Kearny PBA Loc. #21 v. Kearny, 81 N.J. 208, 221 (1979). However, "we owe no special deference to the trial court's interpretation of the law and the legal consequences that flow from the established facts." Yarborough v. State Operated Sch. Dist. of City of Newark, 455 N.J. Super. 136, 139 (App. Div. 2018). Thus, "we review the court's decision on a motion to vacate an arbitration award de novo." Ibid.

N.J.S.A. 2A:24-8 states the grounds for vacating an arbitration award. In relevant part, subsection (d) of the statute provides, "[t]he court shall vacate the award . . . [w]here the arbitrator[] exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made."

OCUA bears the burden to establish the statutory grounds. See Twp. of Wyckoff v. PBA Local 261, 409 N.J. Super. 344, 354 (2009).

A.

Our review is guided by well-established legal principles. "[P]ublic employees have the right to engage in collective negotiation[s] . . . ." Council of N.J. State Coll. Locals v. State Bd. of Higher Educ., 91 N.J. 18, 26 (1982). "However, 'the scope of negotiations in the public sector is more limited than in the private sector' due to the government's 'special responsibilities to the public'

to 'make and implement public policy.'" In re Cnty. of Atl., 445 N.J. Super. 1, 21 (App. Div. 2016), aff'd. on other grounds, 230 N.J. 237 (2017) (quoting In re IFPTE Local 195 v. State, 88 N.J. 393, 401-02 (1982)).

PERC is charged with administering the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -39, and has "primary jurisdiction to . . . determin[e] . . . whether the subject matter of a particular dispute is within the scope of collective negotiations." Cnty. of Atl., 445 N.J. Super. at 20 (quoting Ridgefield Park Educ. Ass'n. v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 154 (1978)). To that end, N.J.S.A. 34:13A-5.4(d) provides, in pertinent part:

> The commission shall at all times have the power and duty, upon the request of any public employer or majority representative, to make a determination as to whether a matter in dispute is within the scope of collective negotiations.

In Ridgefield Park, the Court explained the primacy of PERC's jurisdiction over the issues of negotiability and arbitrability:

> If PERC concludes that the dispute is within the legal scope of negotiability and agreement between the employer and employees, the matter may proceed to arbitration. Where PERC concludes that a particular dispute is not within the scope of collective negotiations and thus not arbitrable, it must issue an injunction permanently restraining arbitration.

9

[Ridgefield Park, 78 N.J. at 154.]

Here, OCUA argues that the judge erred because he "neglected to appreciate . . . [that] the arbitrator exceed[ed] the powers granted to him by the parties'" Agreement and he "neglected PERC's jurisdiction." We agree.

PERC restrained arbitration "to the extent that the [United Steel]'s grievance challenges the [OCUA]'s decisions to post job openings for journeyworkers and hire journeyworkers who have not completed a DOL registered apprenticeship program."

Nonetheless, the arbitrator ordered OCUA "to cease and desist any further violations of the Apprenticeship Standards with respect to procedures for selecting applicants . . . and from placing any employee as journeyworker who had not completed a DOL Registered Apprenticeship Program."

United Steel argues that the arbitrator's award "tracks" PERC's holding. We disagree.

The arbitrator exceeded the scope of his authority by arbitrating, and ordering relief, regarding issues that pertained to "procedures for selecting applicants" and requiring the completion of "a DOL Registered Apprenticeship Program" before the OCUA could place an employee as journeyworker. PERC specifically restrained arbitration of these issues.

In confirming the award, the judge mistakenly believed the arbitrator's decision was within the scope as defined by PERC. With this misunderstanding, the judge then analyzed whether the arbitrator's interpretation of the parties' agreement was "reasonably debatable." A court shall accept an arbitrator's award as long as it is "reasonably debatable." Middletown Tp. PBA Local 124 v. Township of Middletown, 193 N.J. 1, 11 (2007) (quoting N.J. Tpke. Auth. v. Local 196, 190 N.J. 283 (2007)). According to the "reasonably debatable" standard, a court reviewing an arbitration decision "may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position." Borough of E. Rutherford PBA Local 275, 213 N.J. 190, 201-02 (2013) (quoting Middletown Twp. PBS Local 124, 193 N.J. at 11).

However, the "reasonably debatable" standard is inapplicable where PERC finds a "particular dispute is not within the scope of collective negotiations and thus not arbitrable." Ridgefield Park, 78 N.J. at 154.

Here, the judge should have denied United Steel's application to confirm the arbitrator's award as to "procedures for selecting applicants," requiring the completion of "a DOL Registered Apprenticeship Program" before the OCUA could place an employee as journeyworker and granted OCUA's application to

vacate the award because PERC determined these issues were not arbitrable.  In other words, the arbitrator, "exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made."  N.J.S.A. 2A:24-8(d).

B.

The arbitrator ordered OCUA to "cease and desist any further violations of the Apprenticeship Standards with respect to . . . the agreed to ratio of apprentices to journeyworkers."  OCUA argues the arbitrator's "award does not discuss its rationale for this determination whatsoever, and the [judge]'s findings of fact are similarly silent . . . ."  We agree.

Aside from the absence of factual findings by the arbitrator or the judge, OCUA avers that United Steel "implicitly acknowledges that the [arbitrator's] determination on the ratio of apprentices to journey workers is inaccurate." Indeed, United Steel offers that OCUA "has sufficient journeyworkers to comply with [the Agreement]'s 1-1 apprentice to journeyworker ratio."

Under N.J.S.A. 2A:24-8(d), "where there is no evidence in the record to support an arbitration award, it should be vacated on the ground that the arbitrator[] 'exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter was not made.'"  McHugh, Inc.

12

v. Soldo Const. Co., Inc., 238 N.J. Super. 141, 148 (App. Div. 1990) (quoting N.J.S.A. 2A:24-8(d)). Here, there is no evidence to support an arbitration decision that OCUA violated the journeyman-to-apprentice ratio.

We further vacate the portion of the order confirming the arbitrator's decision directing OCUA to "cease and desist" violating the journeyman-to-apprentice ratio. That part of the award was not supported by the factual record. We remand this aspect of the award, to the extent the issue remains disputed, to arbitration as permitted in PERC's decision of June 24, 2021.

To the extent we have not addressed the parties' other arguments we deem them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Vacated and remanded for the judge to enter an order consistent with this decision. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2538-21