SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

## In the Matter of County of Atlantic; In the Matter of Township of Bridgewater (077447) (A-98/99/100-15)

**Argued March 13, 2017 – Decided August 2, 2017**

**SOLOMON, J., writing for the Court.**

In this appeal the Court considers whether the parties to the specific collective negotiations agreements (CNAs) at issue in this case were required to continue scheduled salary increases during the period between the expiration of those contracts and the formation of their successor agreements.

The Fraternal Order of Police, Atlantic Lodge #34 (FOP Lodge 34), and the Atlantic County Prosecutor's Office, P.B.A. Local #77 (PBA Local 77), are two unions that represent certain public employees in Atlantic County. The Policeman's Benevolent Association, Local #174 (PBA Local 174), is a collective bargaining unit for police officers in Bridgewater Township. The two Atlantic County unions entered CNAs with the County that expired on December 31. 2010; the CNA between PBA Local 174 and Bridgewater Township expired on December 31, 2012. All three CNAs provided that, while the contracts were in effect, covered individuals would receive annual salary increases under an automatic increment system. The CNAs further provided that, when they expire, the provisions of the agreement will continue in effect until a successor agreement is negotiated. Since 1996, when the CNAs expired before a successor agreement was executed, the County adhered to the terms and conditions of the most recently expired CNA, including the step-increment process. A similar practice existed in the Township.

On December 22, 2010, Atlantic County informed FOP Lodge 34 and PBA Local 77 that the officers' movement through the salary guides would cease when their respective CNAs expired. The County acknowledged that customary practice was to continue the previously negotiated payment scheme, but it maintained that it was no longer reasonable to follow that practice, given that the entire negotiations landscape has undergone major changes. The County asserted that the Property Tax Levy Cap and the Interest Arbitration Award Cap, preempt the previous standards of practice and render continued salary guide movement impractical and unduly burdensome.

The two unions filed charges against Atlantic County with the Public Employment Relations Commission (PERC), claiming that the County had engaged in an unfair labor practice in violation of the Employer-Employee Relations Act (EERA) by refusing to pay the salary increments after each CNA expired. The hearing examiner found that case law requires the application of the "dynamic status quo" doctrine, which was first adopted by PERC in 1975, when it upheld the generally accepted view that an employer is normally precluded from altering the status quo while engaged in collective negotiations. Given the contract language and the County's history of continuing the payments after previous CNAs had expired, the examiner found that the refusal to pay was a departure from the dynamic status quo and therefore constituted a unilateral change in a mandatory subject of negotiations, in violation of the EERA. The County petitioned for review. PERC disagreed that the contract language required continuation of incremental salary increases after the contract expiration. Additionally, PERC found that the dynamic status quo doctrine was impractical and burdensome in light of economic conditions and legislative changes since the recession. PERC abandoned the dynamic status quo doctrine and found that the County was within its authority to stop applying the salary increment systems in the expired CNAs. PERC dismissed the charges.

After PERC's decision in the Atlantic County matters, Bridgewater Township notified PBA Local 174 that it too would cease the salary step increments once the current CNA expired. The union filed a grievance, which the Township denied. The union then submitted the matter to PERC for arbitration. The grievance was sustained and Bridgewater Township was "ordered to advance all eligible unit members . . . one step on the salary guide retroactive to the employee's 2013 anniversary date of hire." That award was subsequently affirmed by the Law Division. While the matter was still in arbitration, the Township filed a scope-of-negotiations petition with PERC, which granted the Township's request for a restraint of binding arbitration and held that public employers were no longer required, as a matter of law, to fund automatic advancement on a salary guide after a contract has expired.

All three unions appealed the PERC decisions.  The Appellate Division consolidated the appeals, and reversed.  445 N.J. Super. 1 (App. Div. 2016).  The panel found that the Property Tax Levy Cap and the Interest Arbitration Award Cap do not govern contracts that are negotiated and that neither statute preempted the viability of the dynamic status quo doctrine.  The panel ruled that the Commission adopted the dynamic status quo doctrine decades ago, and could not abandon it now as an act of policymaking.  Applying that doctrine, the panel found that the salary increment system was a term and condition of employment that could not be unilaterally terminated during negotiations for a successor CNA.  The Court granted the petitions for certification filed by Bridgewater Township, Atlantic County, and PERC.  227 N.J. 148 (2016); 227 N.J. 152 (2016); 227 N.J. 153 (2016).

**HELD:**  In these cases, the governing contract language of the respective agreements required that the salary step increases remain in place after expiration and until the parties reach agreement on a new CNA.  Atlantic County and Bridgewater Township committed an unfair labor practice when they altered those terms.

1.  The EERA affords public employees an array of rights, including the ability to appoint a majority representative to represent their interests and negotiate agreements with their employer.  In addition, the EERA requires that proposed new rules or modifications of existing rules governing working conditions be negotiated with the majority representative before they are established.  Employers are barred from unilaterally altering mandatory bargaining topics, whether established by expired contract or past practices, without first bargaining to impasse.  (p. 19)

2.  For a subject matter to be mandatorily negotiable between public employers and employees, it must:  (1) be one that intimately and directly affects the work and welfare of public employees; (2) be a topic that has not been fully or partially preempted by statute or regulation; and (3) involve a matter where a negotiated agreement would not significantly interfere with the determination of a governmental policy.  Salary step increments is a mandatorily negotiable term and condition of employment because it is part and parcel of an employee's compensation for any particular year.  (pp. 19-20)

3.  Here, it is not necessary to look beyond the contracts themselves to conclude that the step increases continued beyond the expiration of the contracts.  It is well-settled that courts enforce contracts based on the intent of the parties, the express terms of the contract, the surrounding circumstances, and the underlying purpose of the contract.  Where an agreement is ambiguous, courts will consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation.  (pp. 21-23)

4.  The expired CNAs contain clear and explicit language that the respective salary guides, and all other terms and conditions set forth in the agreements, will continue until a successor agreement is reached.  Atlantic County and Bridgewater Township could have negotiated different terms.  (pp. 23-24)

5.  Had the Atlantic County and Bridgewater Township agreements been silent about whether the terms of the salary increment system were to continue, the issue in this appeal would be more complicated.  It might well have required careful consideration of past practices, custom and the viability of the dynamic status quo doctrine.  But the unilateral modification at issue here directly contradicted the parties' binding written agreement.  Because the salary increment system was a term and condition of employment that governed beyond the CNAs' expiration date, Atlantic County and Bridgewater Township committed an unfair labor practice when they altered that condition without first attempting to negotiate in good faith.  (pp. 24-25)

6.  The Appellate Division based its conclusion on the dynamic status quo doctrine.  Given its reliance on contract principles, the Court did not reach that issue.  The Court notes that its decision does not govern future negotiations, other than to suggest that parties would be wise to include explicit language indicating whether a salary guide will continue beyond the contract's expiration date.  (p. 25)

The judgment of the Appellate Division is **AFFIRMED** on other grounds.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON's opinion.**

IN THE MATTER OF
COUNTY OF ATLANTIC,

 Respondent-Appellant,

  and

PBA LOCAL 243,

 Charging Party,

  and

FOP LODGE 34 and PBA LOCAL 77,

 Charging Parties-Respondents.

_____

IN THE MATTER OF
TOWNSHIP OF BRIDGEWATER,

 Petitioner-Appellant,

  and

PBA LOCAL 174,

 Respondent-Respondent.

_____

   Argued March 13, 2017 – Decided August 2, 2017

   On certification to the Superior Court,
   Appellate Division, whose opinion is
   reported at 445 N.J. Super. 1 (App. Div.
   2016).

   Eric M. Bernstein argued the cause for
   appellant Township of Bridgewater (Eric M.
   Bernstein & Associates, attorneys; Eric M.
   Bernstein, of counsel and on the brief, and
   Philip G. George, on the briefs).

1

Robin T. McMahon argued the cause for appellant New Jersey Public Employment Relations Commission (Robin T. McMahon, General Counsel, attorney; Robin T. McMahon and Don Horowitz, Senior Deputy General Counsel, on the briefs).

David A. Rapuano argued the cause for appellant County of Atlantic (Archer & Greiner, attorneys; David A. Rapuano, of counsel and on the briefs, and Ashley M. Lebrun, on the brief).

James M. Mets argued the cause for respondent PBA Local 174 (Mets Schiro McGovern & Paris, attorneys; James M. Mets, of counsel and on the briefs, and David M. Bander, on the briefs).

Ira W. Mintz argued the cause for respondents FOP Lodge 34 and PBA Local 77 (Weissman & Mintz and Selikoff & Cohen, attorneys; Ira W. Mintz and Steven R. Cohen, on the briefs).

Todd A. Wigder, Assistant Attorney General, submitted a brief on behalf of amicus curiae Governor's Office of Employee Relations (Christopher S. Porrino, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel, and Todd A. Wigder, on the brief).

Arnold Shep Cohen submitted a letter brief on behalf of amicus curiae International Federation of Professional and Technical Engineers Local 195 (Oxfeld Cohen, attorneys).

Louis P. Bucceri submitted a brief on behalf of amicus curiae New Jersey Education Association (Bucceri & Pincus, attorneys; Louis P. Bucceri, of counsel and on the brief, and Albert J. Leonardo, on the brief).

2

Cynthia J. Jahn submitted a letter brief on behalf of amicus curiae New Jersey School Boards Association (Cynthia J. Jahn, General Counsel, attorney).

Craig S. Gumpel submitted a letter brief on behalf of amicus curiae New Jersey State Firefighters' Mutual Benevolent Association (Law Offices of Craig S. Gumpel, attorneys).

Joseph M. Hannon submitted a brief on behalf of amicus curiae New Jersey State League of Municipalities, New Jersey Association of Counties, and New Jersey Council of County Colleges (Genova Burns, attorneys; Joseph M. Hannon, of counsel and on the brief, Joseph V. Manney, on the brief).

Matthew D. Areman submitted a letter brief on behalf of amicus curiae New Jersey State Lodge of the Fraternal Order of Police (Markowitz and Richman, attorneys).

Paul L. Kleinbaum submitted a letter brief on behalf of amicus curiae New Jersey State PBA (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys).

Stephen E. Trimboli submitted a brief on behalf of amicus curiae County of Morris (Trimboli & Prusinowski, attorneys; Stephen E. Trimboli, of counsel and on the brief, and Lauren Kavanagh, on the brief).

David M. Bander submitted a letter brief on behalf of amicus curiae Professional Firefighters Association of New Jersey (Mets Schiro McGovern & Paris, attorneys).

Steven P. Weissman submitted a letter brief on behalf of amicus curiae Communications Workers of America, AFL-CIO (Weissman & Mintz, attorneys).

JUSTICE SOLOMON delivered the opinion of the Court.

3

We are called upon to determine whether the parties to the specific collective negotiations agreements (CNAs) at issue in this case were required to continue scheduled salary increases during the period between the expiration of those contracts and the formation of their successor agreements.

This appeal involves the CNAs between (1) Atlantic County and the Fraternal Order of Police, Atlantic Lodge #34 (FOP Lodge 34); (2) Atlantic County and the Atlantic County Prosecutor's Office, P.B.A. Local #77 (PBA Local 77); and (3) Bridgewater Township and the Policemen's Benevolent Association, Local #174 (PBA Local 174).

Atlantic County informed FOP Lodge 34 and PBA Local 77 that when their respective CNAs expired the County would no longer implement the incremental salary scheme provided for in those contracts. Both unions filed charges with the Public Employment Relations Commission (PERC or the Commission), claiming that Atlantic County had engaged in an unfair labor practice, contrary to the Employer-Employee Relations Act (EERA), N.J.S.A. 34:13A-1 to -43.

The hearing examiner agreed with the unions and found that Atlantic County's "departure from the dynamic status quo -- in this case, the refusal to pay automatic increments -- constitute[d] a unilateral change in a mandatory subject of negotiations in violation of the [EERA]." Atlantic County

4

petitioned PERC for review, and the Commission came to the opposite conclusion. It found that in light of economic conditions and legislative changes since the recession, the dynamic status quo doctrine, which would have required the continuance of the step increment system, was impractical and burdensome. Accordingly, PERC abandoned the dynamic status quo doctrine and found that Atlantic County was within its authority to stop applying the salary increment systems in the expired CNAs.

Subsequently, Bridgewater Township informed PBA Local 174 that it too would cease the salary step increments once the current CNA expired. PBA Local 174 filed for grievance arbitration. The Commission, citing its Atlantic County decision, found for Bridgewater Township. Because the dynamic status quo doctrine had been abandoned, PERC found that salary step increases beyond the contract's expiration were not a term and condition of employment that mandated negotiation or arbitration.

All three unions appealed.[1] The Appellate Division consolidated the cases and reversed the Commission. In re County of Atlantic and PBA Local 243 and FOP Lodge 34 and PBA

[1] PBA Local 243 was originally a party to the dispute with Atlantic County. However, it withdrew its charges prior to PERC'S decision in this matter and was not involved in the appeal below.

5

Local 77; In re Township of Bridgewater and PBA Local 174, 445 N.J. Super. 1 (App. Div. 2016). The panel ruled that the Commission adopted the dynamic status quo doctrine decades ago and could not simply abandon it now "as an act of mere policymaking." Id. at 16, 19, 22. Applying that doctrine, the Appellate Division found that the salary increment system was a term and condition of employment that could not be unilaterally terminated during negotiations for a successor CNA. Id. at 16-18.

We need not determine whether, as a general rule, an employer must maintain the status quo while negotiating a successor agreement. In these cases, the governing contract language requires that the terms and conditions of the respective agreements, including the salary step increases, remain in place until a new CNA is reached. Therefore, the judgment of the Appellate Division is affirmed on other grounds.

I.

A.

We glean the following facts from the record. We begin with the dispute between Atlantic County and the two unions with which it contracted.

FOP Lodge 34 represents all full-time, Atlantic County employees who are classified as "Corrections Officers"; it excludes Captains, Lieutenants, Sergeants, and temporary

6

employees. PBA Local 77 represents the "Sergeants, Detective I, and Detectives" working for the Atlantic County Prosecutor's Office. Both of those unions had CNAs with Atlantic County that expired on December 31, 2010.

While the contracts were in effect, covered individuals would receive annual salary increases in accordance with an increment system. Each contract contained a grid that set forth this payment scheme.[2] The columns in the grid represented a year of the contract, and the rows (steps) represented an employee's year(s) of service. An individual's salary could be found at the intersection of the column and row that matched the year in question and the total number of years the specific employee had served up to that point. Under both grid systems, an officer was advanced horizontally by one column at the end of each contract year and vertically by one step on the anniversary of his or her hire date. The employee's new, increased salary would match the amount provided at that intersecting point.

Each contract contained language that touched on the continuation of benefits. PBA Local 77's most recent contract, and the three that preceded it, stated that "[a]ll provisions of this Agreement will continue in effect until a successor Agreement is negotiated." PBA Local 34's CNA provided that

---

[2] The respondents' Salary Guides are attached in the Appendix for reference.

"[a]ll terms and conditions of employment, including any past or present benefits, practices or privileges which are enjoyed by the employees covered by this Agreement that have not been included in this Agreement shall not be reduced or eliminated and shall be continued in full force and effect."

Typically, as the Atlantic County Department of Law explained, after a CNA expires, "the officers who remain on the salary guide continue to move through the guide of the expired contracts and then salaries are adjusted retroactively when a successor agreement is reached." Indeed, every CNA entered into between Atlantic County and PBA Local 77 since 1996 expired before a successor agreement was executed. During the interim periods between CNAs, Atlantic County adhered to the terms and conditions of the most recently expired CNA, including the step-increment system. Similarly, Atlantic County continued to pay step increments to employees on their anniversary dates from 2007 through 2010 in accordance with their CNA, which expired on December 31, 2006. The successor agreement, which covered the period from January 1, 2007 through December 31, 2010, was not executed until October 2011.

On December 22, 2010, however, Atlantic County informed FOP Lodge 34 and PBA Local 77 that the officers' movement through the salary guides would cease nine days later, when their respective CNAs expired on December 31. The County acknowledged

8

that customary practice was to continue the previously negotiated payment scheme, but it maintained that it was "no longer efficacious or reasonable" to follow that practice, given that "the entire negotiations landscape has undergone major changes." The County asserted that the Property Tax Levy Cap, N.J.S.A. 40A:4-45.44 to -45.47, and the Interest Arbitration Award Cap, N.J.S.A. 34:13A-16.7, "preempt[] the previous standards of practice and render continued salary guide movement impractical and unduly burdensome."[3] According to the County, "[b]oth of these legislative enactments w[ould] significantly restrict the salary increases that can be given and this would include the increments from the salary guide." Specifically, the County explained that "movement of officers through an expired salary guide [would] likely result in increases that exceed the amounts that [could] legally be granted under the recently enacted legislation."

FOP Lodge 34 and PBA Local 77 each filed unfair practice charges with PERC, and shortly thereafter, Atlantic County stopped paying step increments. The unions alleged that Atlantic County had violated the EERA, N.J.S.A. 34:13A-

---

[3] The Property Tax Levy Cap prohibits local governments from increasing property tax levies by more than two percent year-over-year. N.J.S.A. 40A:4-45.44(b). The Interest Arbitration Award Cap places a two percent cap on increases to salaries under contracts that are created through interest arbitration. N.J.S.A. 34:13A-16.7(b).

9

5.4(a)(1), (2), (3), (5), and (7), by refusing to pay the salary increments after each CNA expired, thereby unilaterally altering the status quo. The unions also filed applications for interim relief seeking an order directing the County to pay the increments.

The PERC chair denied the applications for interim relief and referred the cases to the Director of Unfair Practices. The Director reviewed the charges and issued a Complaint, ordering a hearing on the alleged violations of Sections 5.4(a)(1) and (5) of the EERA, which prohibit a public employer from "interfering with, restraining or coercing employees in the exercise of" their rights under the EERA and "refusing to negotiate in good faith" the terms and conditions of employment. The Director dismissed the claims relating to Sections 5.4(a)(2), (3), and (7)[4] and issued an Order consolidating the cases.

The PERC hearing examiner conducted a hearing and issued a report and recommended decision. The hearing examiner found that "[f]or non-education employees, the case law requires the

_____

[4] Under those provisions, a public employer is prohibited from: (1) "[d]ominating or interfering with the formation, existence or administration of any employee organization"; (2) "[d]iscriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage employees in the exercise of the rights guaranteed to them by" the EERA; and (3) "[v]iolating any of the rules and regulations established by the commission." N.J.S.A. 34:13A-5.4(a)(2), (3), and (7).

10

application of the dynamic status quo" doctrine, which was first adopted by PERC in 1975, when it upheld "the generally accepted view . . . that an employer is normally precluded from altering the status quo while engaged in collective negotiations." In re Piscataway Twp. Bd. of Educ., P.E.R.C. No. 91, 1975 N.J. PERC LEXIS 23 at 6 (1975).

Given the contract language, which indicated an intention to continue the increment payments into the future, and Atlantic County's history of continuing the payments even after previous CNAs had expired, the hearing examiner concluded that "the payment of annual automatic increments constituted a practice" that was "an existing term and condition of employment." In other words, the hearing examiner found that the County's "refusal to pay automatic increments" was a "departure from the dynamic status quo" and therefore "constitute[d] a unilateral change in a mandatory subject of negotiations in violation of the [EERA]."

In rendering this decision, the hearing examiner rejected the County's argument that the two-percent Property Tax Levy Cap conflicted with the EERA. Contrary to the County's understanding, he clarified that "the tax levy cap statute does not mandate that the County limit any particular salary increase to a maximum of 2%." In the hearing examiner's view, paying the salary increments was still possible because the legislation

11

"requires that the County's overall tax levy not exceed 2% more than the prior year's tax levy."

PERC adopted the hearing examiner's findings of fact, but then clarified that it was "asked to review . . . the continuing propriety of what is known as the dynamic status quo doctrine." Looking to the doctrine's inception and evolution, the Commission found that the doctrine had not yet been applied in a situation such as this, where there is "a post expiration increase in remuneration." PERC found that the dynamic status quo doctrine was intended to establish a predictable environment that favors neither party during negotiations, and that in this case "a post expiration requirement that employers continue to pay and fund a prior increment system creates myriad instabilities in the negotiations process."

First, PERC found that the Property Tax Levy Cap and the Interest Arbitration Award Cap are legislative initiatives that "were unanticipated thirty years ago" when it adopted the dynamic status quo doctrine. Those restrictions, in the Commission's view, were "designed to control the rate of growth in government spending" and, therefore, "[i]t is in both sides' interest to have the ability to negotiate over adjustments in the number" and dollar amounts attributed to incremental salary steps in successor agreements. Second, PERC suggested that the

12

"public policy underlying labor negotiations in New Jersey" has changed.  The Commission found

> that the dynamic status quo no longer fulfills the needs of the parties in that it serves as a disincentive to the prompt settlement of labor disputes, and disserves rather than promotes the prompt resolution of labor disputes.  While public employers will continue to be bound by the strictures of the status quo, that will be defined as "static" rather than a dynamic status quo.

PERC also disagreed with the hearing examiner's finding that the contracts' language indicated "an express agreement . . . to continue to provide incremental increases beyond the termination date of the agreements."  Because it repudiated the dynamic status quo doctrine, and because it found no other basis to require the incremental payments beyond contract expiration, the Commission dismissed the unions' unfair labor charges.

B.

Also relevant to this appeal is a CNA between Bridgewater Township and PBA Local 174, a collective bargaining unit for police officers below the rank of sergeant, which expired on December 31, 2012.  That agreement provided for a salary increment system that mirrored the systems set forth in the CNAs between Atlantic County and FOP Lodge 34 and PBA Local 77.  Although the contract expired on December 31, 2012, Article XIX, Section 2 of the CNA stated that "[t]his agreement shall remain in full force and effect during collective negotiations between

13

the parties beyond the date of expiration set forth herein until the parties have mutually agreed on a new agreement."

After PERC's decision in the Atlantic County matters, Bridgewater Township notified PBA Local 174 that it would not pay annual step increases beyond the expiration date of the current CNA until a successor agreement was reached, relying on the same reasoning as that of Atlantic County for doing so. Soon after the CNA expired, PBA Local 174 filed a grievance against the Township, alleging violations of: Article XV of the parties' CNA,[5] past practice, and the covenant of good faith and fair dealing. Bridgewater Township denied the grievance and, four days later, PBA Local 174 submitted the matter to PERC for arbitration.

The arbitrator found in PBA Local 174's favor, concluding that the parties had an "unequivocal past practice show[ing] that they interpreted the contract as requiring that an officer be advanced on the salary guide on his or her anniversary date, both during the term of the agreement and in the hiatus period following expiration." The arbitrator also emphasized that PERC has "long held that the status quo includes the extension of

---

[5] Article XV of the CNA between Bridgewater Township and PBA Local 174 is entitled "COMPENSATION." Within this Article is a "Salary Guide" provision that states, "Effective January 1, 2009, 2010, 2011, and 2012, the wage rates shall be those set forth in Appendix A and will be paid on the 15th and second to last day of the month or immediately preceding work day."

14

automatic increments beyond the life of the agreement because the salary guide system calling for such increments is a term and condition of employment." (internal quotation marks omitted). Accordingly, the grievance was sustained and Bridgewater Township was "ordered to advance all eligible unit members . . . one step on the salary guide retroactive to the employee's 2013 anniversary date of hire." That award was subsequently affirmed by the Law Division.

While the matter was still in arbitration, Bridgewater Township filed a scope-of-negotiations petition with PERC, alleging that the grievance was outside the scope of negotiations because, "based upon an undue hardship," the Township is allowed to "freeze step increases pending the outcome of collective bargaining negotiations." After the Law Division affirmed the grievance arbitration, PERC granted the Township's request for a restraint of binding arbitration. PERC found that "the issue of automatic movement on a salary guide after a contract has expired is not a term and condition of employment and therefore not mandatorily negotiable and legally arbitrable." As such, the Commission held that public employers were no longer required, "as a matter of law, to fund automatic advancement on a salary guide after a contract has expired."

C.

15

FOP Lodge 34, PBA Local 77, and PBA Local 174 appealed the PERC decisions. The Appellate Division consolidated the appeals and, in a published decision, reversed the Commission. In re County of Atlantic, supra, 445 N.J. Super. at 6.

The panel found that the Property Tax Levy Cap and the Interest Arbitration Award Cap do not govern contracts that are negotiated and that neither statute preempted the viability of the dynamic status quo doctrine. Id. at 14-16. The panel noted that those laws were enacted to restrict overall municipal budgets and reasoned that, if the Legislature wished to place a cap on negotiated agreements specifically, it would have done so through amending statutes or passing additional legislation. Id. at 15-16. The Appellate Division therefore found that PERC went beyond the permissible scope of its authority to interpret and administer the EERA because its decision was "undertaken in an area in which the Legislature did not act" and was "driven by the tax levy cap, [and] concerns regarding government budgets, and not the [EERA]." Id. at 15.

Moreover, the panel concluded that PERC could not discard the dynamic status quo doctrine, which was originally derived from PERC's interpretation of N.J.S.A. 34:13A-5.3, "as an act of mere policymaking." Id. at 15-17. Importantly, the Appellate Division highlighted that the parties negotiated their CNAs with the understanding that the dynamic status quo doctrine would

16

govern any hiatus between contracts, and that PERC undermined the parties' legitimate expectations.  Id. at 17-18.  The panel acknowledged that "government employers can[] negotiate to avoid paying salary increments after the lapse of CNAs" if they wish to and can "recoup salary increments in a new contract" during negotiations.  Id. at 18.

Finally, with regard to PERC's decision on the scope-of-negotiations petition by Bridgewater Township, the Appellate Division found that "[s]alary is a mandatory subject of negotiation, and the Township's decision not to pay automatic salary increments in accordance with the earlier CNAs and past practice was indeed arbitrable."  Id. at 22-23.

Accordingly, the Appellate Division reversed PERC's decisions as to both the Atlantic County and Bridgewater Township matters, holding that "the fiscal health of municipalities and tax rates are not within PERC's charge" and that "PERC cannot abandon the adjudicative doctrine it long ago adopted."  Ibid.

Bridgewater Township, Atlantic County, and PERC each filed petitions for certification, which this Court granted.  227 N.J. 148 (2016); 227 N.J. 152 (2016); 227 N.J. 153 (2016).  The following parties were granted amicus curiae status and wrote in favor of overturning the Appellate Division:  the Governor's Office of Employee Relations; the New Jersey State League of

17

Municipalities, New Jersey Association of Counties, and New Jersey Council of County Colleges; the County of Morris; and the New Jersey School Boards Association. The following parties were also granted amicus curiae status and argue that the Appellate Division judgment should be affirmed: the New Jersey Education Association; the Communications Workers of America, AFL-CIO; the New Jersey State Firefighters Mutual Benevolent Association; the New Jersey State Lodge of the Fraternal Order of Police; the New Jersey State PBA; and the Professional Firefighters Association of New Jersey.

## II.

PERC, Bridgewater Township, Atlantic County, and supporting amici seek reversal of the Appellate Division. They argue that the dynamic status quo doctrine was never adopted by this Court and that the Commission appropriately abandoned the principle, after considering relevant factors, under its authority to interpret and administer the EERA.

PBA local 77, PBA Local 174, FOP Lodge 34, and accompanying amici argue that the Appellate Division properly reversed the Commission because the salary step increases are a term and condition of employment that Atlantic County and Bridgewater Township unilaterally altered without first negotiating, in violation of the EERA. In addition, they assert that PERC

18

impermissibly abandoned the dynamic status quo doctrine, a "bedrock principle of labor relations law."

### III.

The EERA affords public employees a vast array of rights, including the ability to appoint a majority representative to represent their interests and negotiate agreements on their behalf with an employer. N.J.S.A. 34:13A-5.3. In addition, the EERA provides that "[p]roposed new rules or modifications of existing rules governing working conditions shall be negotiated with the majority representative before they are established." Ibid. Thus, employers are barred from "unilaterally altering . . . mandatory bargaining topics, whether established by expired contract or by past practice, without first bargaining to impasse." Bd. of Educ. v. Neptune Twp. Educ. Ass'n, 144 N.J. 16, 22 (1996); accord Galloway Twp. Bd. of Educ. v. Galloway Twp. Educ. Ass'n, 78 N.J. 25, 48 (1978) (finding Legislature, through enactment of EERA, "recognized that the unilateral imposition of working conditions is the antithesis of its goal that the terms and conditions of public employment be established through bilateral negotiation").

The test for determining whether a subject is mandatorily negotiable between public employers and employees was established in In re Local 195, IFPTE, 88 N.J. 393, 403-05 (1982). This Court held in Local 195 that to be negotiable, the

19

subject matter must (1) be an "item [that] intimately and directly affects the work and welfare of public employees"; (2) be a topic that "has not been fully or partially preempted by statute or regulation"; and (3) involve a matter where "a negotiated agreement would not significantly interfere with the determination of governmental policy." Id. at 404-05; Robbinsville Twp. Bd. of Educ. v. Washington Twp. Educ. Ass'n, 227 N.J. 192, 199 (2016) (applying "[t]he now time-honored test" to determine whether subject at issue was mandatorily negotiable).

We find that salary step increments is a mandatorily negotiable term and condition of employment because it is part and parcel to an employee's compensation for any particular year. This conclusion is supported by precedent that dates back to the inception of Local 195's three-part test. Robbinsville, supra, 227 N.J. at 199 ("The 'prime examples' of mandatorily negotiable terms and conditions of employment under New Jersey case law 'are rates of pay and working hours.'" (quoting Local 195, supra, 88 N.J. at 403)); Borough of Keyport v. Int'l Union of Operating Eng'rs, 222 N.J. 314, 352 (2015) ("Whatever else terms and conditions of employment may mean, it has been universally accepted that wages and hours are terms and conditions of employment that public employers must negotiate with their employees."); In re Hunterdon Cty. Bd. of Chosen

20

_Freeholders_, 116 N.J. 322, 331 (1989); Bd. of Educ. of City of Englewood v. Englewood Teachers Ass'n, 64 N.J. 1, 6-7 (1973) ("Surely working hours and compensation are terms and conditions of employment within the contemplation of the [EERA].").

Accordingly, we must determine whether the salary increment systems provided for in the expired CNAs still governed working conditions during the hiatus period between agreements. _See_ N.J.S.A. 34:13A-5.3, -5.4(a)(1), and -5.4(a)(5).

## IV.

### A.

Here, we need not look beyond the contracts themselves to conclude that the step increases continued beyond the expiration of the contracts. Normally "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement." Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 207, 111 S. Ct. 2215, 2226, 115 L. Ed. 2d 177, 198 (1991). However, "[e]xceptions are determined by contract interpretation. . . . And of course, if a collective-bargaining agreement provides in explicit terms that certain benefits continue after the agreement's expiration, disputes as to such continuing benefits may be found to arise under the agreement." Ibid.

It is well-settled that "[c]ourts enforce contracts 'based on the intent of the parties, the express terms of the contract,

21

surrounding circumstances and the underlying purpose of the contract.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (quoting Caruso v. Ravenswood Developers, Inc., 337 N.J. Super. 499, 506 (App. Div. 2001)). A reviewing court must consider contractual language "'in the context of the circumstances' at the time of drafting and . . . apply 'a rational meaning in keeping with the expressed general purpose.'" Sachau v. Sachau, 206 N.J. 1, 5-6 (2011) (quoting Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953)). "[I]f the contract into which the parties have entered is clear, then it must be enforced" as written. Maglies v. Estate of Guy, 193 N.J. 108, 143 (2007); accord Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960) ("Courts cannot make contracts for parties. They can only enforce the contracts which the parties themselves have made." (quoting Sellars v. Cont'l Life Ins. Co., 30 F.2d 42, 45 (4th Cir. 1929))). Where an agreement is ambiguous, "courts will consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation." County of Morris v. Fauver, 153 N.J. 80, 103 (1998).

When as here, there are no material factual disputes, "the interpretation of a contract is subject to de novo review by an appellate court." Kieffer v. Best Buy, 205 N.J. 213, 222-23

22

(2011) ("[I]t is a general rule that the construction of a contract is a question of law . . . ." (quoting Jennings v. Pinto, 5 N.J. 562, 569-70 (1950))).

                                    B.

Applying those principles to the contracts at issue here, the expired CNAs involving PBA Local 174 and PBA Local 77 contain clear and explicit language that the respective salary guides -- and all other terms and conditions set forth in those agreements -- will continue until a successor agreement is reached.  Specifically, PBA Local 174's CNA with Bridgewater Township reads, "[t]his agreement shall remain in full force and effect during collective negotiations between the parties beyond the date of expiration set forth herein until the parties have mutually agreed on a new agreement."  Similarly, the CNA between PBA Local 77 and Atlantic County provides that "[a]ll provisions of this Agreement will continue in effect until a successor Agreement is negotiated."  Accordingly, we find that the salary increment systems remained in effect after the agreements' expiration dates under basic principles of contract law.

We reach the same result with regard to the agreement between FOP Lodge 34 and Atlantic County.  Their CNA states that "[a]ll terms and conditions of employment, including any past or present benefits, practices or privileges which are enjoyed by the employees covered by this Agreement that have not been

                                    23

included in this Agreement shall not be reduced or eliminated and shall be continued in full force and effect."

Atlantic County and Bridgewater Township could have simply negotiated different contract terms. For example, an agreement between the Board of Education of Ho-Ho-Kus and Ho-Ho-Kus Education Association, for the time period from July 1, 2012 through June 30, 2015, provided that the parties "agree that in the absence of a contractual settlement for a successor agreement prior to June 30, 2015, increments for certified personnel shall not be automatic in the 2015-2016 school year (i.e., increments shall not be paid unless and until the parties agree to a successor contract)." That sample of clear contractual language leaves no room for confusion and could have easily been incorporated into the CNAs at issue here. See In re Hunterdon Cty., supra, 116 N.J. at 338 ("It is important to recognize that the process of negotiation serves an important role in effectuating the promotion of 'permanent, public and private employer-employee peace and the health, welfare, comfort and safety of the people of the State.'" (citing N.J.S.A. 34:13A-2)).

Had the Atlantic County and Bridgewater Township agreements been silent about whether the terms of the salary increment system were to continue, the issue in this appeal would be more complicated. It might well have required careful consideration

24

of past practices, custom and the viability of the dynamic status quo doctrine.  See Township of Middletown v. Middletown PBA Local 124, 334 N.J. Super. 512 (App. Div. 1999), aff'd, 166 N.J. 112 (2000).  But the unilateral modification at issue here directly contradicted the parties' binding written agreement. Because the salary increment system was a term and condition of employment that governed beyond the CNAs' expiration date, Atlantic County and Bridgewater Township committed an unfair labor practice when they altered that condition without first attempting to negotiate in good faith, in violation of N.J.S.A. 34:13A-5.3, -5.4(a)(1), and -5.4(a)(5).

We note that the Appellate Division based its conclusion on the dynamic status quo doctrine, finding that it is "neither a regulation nor a policy statement" that PERC can simply discard in advantageous circumstances.  In re County of Atlantic, supra, 445 N.J. Super. at 17-18.  Given our reliance on contract principles, we need not reach that issue.

Our decision today does not govern future negotiations, other than to suggest that parties would be wise to include explicit language indicating whether a salary guide will continue beyond the contract's expiration date.

V.

For the foregoing reasons, the judgment of the Appellate Division is affirmed on other grounds.

25

## Appendix

**Salary Guide for FOP Lodge 34:**

| Steps | 2007 | 2008 | 2009 | 2010 |
|---|---|---|---|---|
| 1 | $31,879 | $32,835 | $33,987 | $36,152 |
| 2 | $33,939 | $34,957 | $36,180 | $38,152 |
| 3 | $34,454 | $35,487 | $36,729 | $40,152 |
| 4 | $36,514 | $37,609 | $38,925 | $42,152 |
| 5 | $40,634 | $41,853 | $43,317 | $44,833 |
| 6 | $45,269 | $46,627 | $48,258 | $49,948 |
| 7 | $51,939 | $55,400 | $57,339 | $59,346 |
| 8 | $59,228 | $61,597 | $63,907 | $62,905 |
| 9 | | | | $66,463 |

**Salary Guide for PBA Local 77:**

| Steps | 2006 | 2007 | 2008 | 2009 | 2010 |
|---|---|---|---|---|---|
| 1 | $42,800 | $44,298 | $45,848 | $47,775 | $49,677 |
| 2 | $44,800 | $46,368 | $47,991 | $50,314 | $52,535 |
| 3 | $46,620 | $48,252 | $49,941 | $52,654 | $55,187 |
| 4 | $49,010 | $50,725 | $52,501 | $55,626 | $58,493 |
| 5 | $51,400 | $53,199 | $55,061 | $58,599 | $61,799 |
| 6 | $53,790 | $55,673 | $57,621 | $61,570 | $65,105 |
| 7 | $56,180 | $58,146 | $60,181 | $64,542 | $68,411 |
| 8 | $76,002 | $68,404 | $70,798 | $75,852 | $80,347 |
| 9 | -- | $79,042 | $82,204 | $88,404 | $94,020 |
| Sergeant | $81,332 | $84,575 | $87,958 | $94,592 | $100,601 |

**Salary Guide for PBA Local 174:**

**A) For employees hired prior to January 1, 2011**

| Steps | 2009 | 2010 | 2011 | 2012 |
|-------|------|------|------|------|
| 1 | $45,544 | $45,544 | $46,796 | $48,083 |
| 2 | $57,363 | $57,363 | $58,940 | $60,561 |
| 3 | $76,196 | $76,196 | $78,292 | $80,445 |
| 4 | $82,866 | $82,866 | $85,144 | $87,486 |
| 5 | $82,866 | $82,866 | $85,144 | $87,486 |
| 6 | $85,163 | $85,163 | $87,505 | $89,912 |
| 7 | $85,163 | $85,163 | $87,505 | $89,912 |
| 8 | $87,720 | $87,720 | $90,132 | $92,611 |
| 9 | $93,896 | $93,896 | $96,478 | $99,131 |
| 10 | $96,527 | $96,527 | $99,182 | $101,909 |

**B) For employees hired on or after January 1, 2011**

| Steps | 2011 | 2012 |
|-------|------|------|
| 1 | $46,796 | $48,033 |
| 2 | $52,617 | $54,064 |
| 3 | $58,438 | $60,045 |
| 4 | $64,259 | $66,026 |
| 5 | $70,080 | $72,007 |
| 6 | $75,901 | $77,988 |
| 7 | $81,722 | $83,969 |
| 8 | $87,543 | $89,950 |
| 9 | $93,364 | $95,931 |
| 10 | $99,182 | $101,909 |

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON's opinion.