**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0884-17T2

DENISE BRODO,

    Plaintiff-Appellant,

v.

TOWNSHIP OF HADDON
and HADDON TOWNSHIP
POLICE DEPARTMENT,

    Defendants-Respondents.

_____

Submitted April 9, 2019 – Decided May 9, 2019

Before Judges Suter and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1517-16.

Castellani Law Firm, LLC, attorneys for appellant (David R. Castellani, on the brief).

Wade, Long, Wood & Long, LLC, and Platt & Riso, PC, attorneys for respondents (Daniel H. Long and Eric J. Riso, on the brief).

PER CURIAM

Denise Brodo appeals an order that limited the scope of discovery in her litigation against defendants Haddon Township and Haddon Township Police Department, and an order that granted summary judgment to defendants, dismissing her complaint. We reverse the orders, and reinstate the complaint to permit discovery.

I

Defendants terminated plaintiff's employment as a communication specialist and class II officer in October 2015 because she was six minutes late for work on September 6, 2015 and seven minutes late on September 30, 2015. She had been employed for seventeen years. Plaintiff claimed that "similarly situated co-workers who arrived late [for] work were not subjected to the same discipline or terminated as a result of arriving late." She sued defendants in April 2016, requesting damages for violation of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, or in the alternative, under Pierce v. Ortho Pharm. Corp., 84 N.J. 58 (1980).[1] She requested equitable relief, including reinstatement with back and front pay (the 2016 complaint).

---

[1] Under Pierce, the Supreme Court recognized "that an [at-will] employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." Id. at 72.

Defendants' filed a motion to dismiss under Rule 4:6-2(e), arguing the case was barred by plaintiff's settlement of another CEPA case that she filed in 2013 (the 2013 complaint). In the 2013 complaint, plaintiff alleged she was responsible to prepare payroll for defendant Township. She claimed she reported that an officer on the force tried to obtain payment twice for the same work. Plaintiff alleged that defendants retaliated against her by reducing her job responsibilities, by not giving her certain work assignments and by suspending her for reporting late to work. In July 2015, plaintiff and defendants signed a Settlement Agreement and General Release (Agreement) that resolved the 2013 complaint.

The 2016 complaint claimed that plaintiff's termination from employment for lateness was based on events after the Agreement was signed, and that this was new retaliation for the same whistleblowing conduct she alleged in the 2013 complaint. The first thirty-eight paragraphs of the 2016 complaint were very similar to the 2013 complaint.

Rather than dismissing the 2016 complaint based on the Agreement as defendants requested, the court denied the motion without prejudice. It limited discovery to two issues: defendant Township's policies and procedures on

lateness and whether plaintiff actually was late on the dates claimed by defendants.

A year later, plaintiff's attorney filed a motion to be relieved as counsel. She certified that plaintiff "terminated the services of the law firm and instructed [them] to cease all work in this matter" but that plaintiff "declined" to execute a substitution of attorney. While that motion was pending, defendants filed a motion for summary judgment to dismiss the 2016 complaint based on the Agreement. Plaintiff's counsel requested a thirty-day adjournment of the summary judgment motion so that plaintiff could retain new counsel, noting that defendants' motion "was clearly intended to take advantage of the fact that plaintiff had not yet retained new counsel and [her] firm [could not] ethically take action in this litigation." The court denied the requested adjournment, stating, "[t]he answer is that [the] motion [to be relieved] is pending until I decide this motion."[2]

The court granted the unopposed motion for summary judgment on September 15, 2017, dismissing the 2016 complaint with prejudice. The court noted the "deposition testimony establish[ed] that the plaintiff was late on [the

---

[2] The transcript indicates the motion to be relieved as counsel was pending before another judge. The record does not include a copy of that order.

two dates in question]" and that "[u]nder [the discovery judge's] prior ruling, that issue on which there is no factual dispute is dispositive on this case since that establishes per that prior ruling that the plaintiff was, in fact, late, [and] that termination . . . was permitted by the Township's policies."

On appeal, plaintiff argues that the court abused its discretion by limiting discovery and by denying her request to adjourn the summary judgment motion to allow her to obtain new counsel. She argues that summary judgment motion should not have been granted—not only because discovery was incomplete— but because she should have been able to conduct discovery about whether she was being retaliated against based on her prior alleged whistleblowing activity.

II

Where the underlying issue involves a discovery dispute, our review is limited to determining whether the trial court abused its discretion. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011) (citing Bender v. Adelson, 187 N.J. 411, 428 (2006)). Ordinarily, "we decline to interfere with discretionary rulings involving discovery unless it appears that an injustice has been done." Cunningham v. Rummel, 223 N.J. Super. 15, 19 (App. Div. 1988). "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"

A-0884-17T2

Castello v. Wohler, 446 N.J. Super. 1, 24 (App. Div. 2016) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

To prove a prima facie claim under CEPA, a plaintiff must show: "(1) [she] reasonably believed defendants were violating a law, rule, or public policy; (2) that [she] performed a whistleblowing activity; (3) that an adverse employment action was taken against [her]; and (4) that a causal relationship exist[ed] between the whistleblowing activity and the adverse employment action." Puglia v. Elk Pipeline, Inc., 226 N.J. 258, 280 (2016). A defendant can rebut a prima facie claim by providing a "legitimate non-retaliatory reason for the adverse action." Royster v. N.J. State Police, 439 N.J. Super. 554, 575 (App. Div. 2015) (citing Jamison v. Rockaway Twp. Bd. of Educ., 242 N.J. Super. 436, 447 (App. Div. 1990)). "The plaintiff is then 'afforded a fair opportunity' to show that the reason given 'is a pretext for the retaliation or that a discriminatory reason more likely motivated the employer.'" Id. at 575-76 (quoting Jamison, 242 N.J. Super. at 447).

Under CEPA, even if an employer can prove that its employment action had a basis, an employee may still prevail based on a mixed motive CEPA retaliation claim. Puglia, 226 N.J. at 282. The Court in Puglia cited the CEPA model jury charge, which made clear that an employer can be motivated by

"retaliatory and non-retaliatory motives." Id. at 283 (citing Model Jury Charges (Civil), 2.32 "New Jersey Conscientious Employee Protection Act" (2014)). A plaintiff in a CEPA case "need 'only prove that retaliation played a role in the decision and that it made an actual difference in defendant's decision.'" Ibid. The trial court's discovery order did not permit plaintiff to explore whether defendants' motive in terminating her employment was mixed, meaning whether retaliation played a role and whether it made an actual difference.

Defendants argued that plaintiff's waiver in the Agreement precluded the 2016 litigation. They argued that plaintiff could not prove a new CEPA claim because to do so she would have to show "she was being retaliated [against] for events that occurred prior to the settlement of the first lawsuit." Defendants argued that plaintiff waived any new claims of retaliation because all of it related to the prior acts that she released in the Agreement.

Under the Agreement, plaintiff

> waive[d], release[d] and [gave] up any and all claims . . . she may have against all defendants . . . based upon any act, event or omission occurring before the execution of the Agreement, including, but not limited to, any events related to, arising from, or in connection with plaintiff's employment . . . with defendants.

She expressly gave up "any and all claims arising from or relating to plaintiff's employment, and/or association with the defendants based upon any act, event

or omission occurring before the date of execution of this settlement agreement . . . ."

Without making any reference to language in the Agreement, the court found that it resulted in a "clean slate" for the parties. The court said it was "not waiving future claims" but rather, "[e]verybody starts off with a clean slate [after the Agreement] and she was late twice in September [2015], so she was terminated." The court acknowledged that her employer did not "have the right to retaliate" although it did "ha[ve] the right, like any other employer, to terminate her if she's late." Therefore, the court limited discovery to whether she was late on the two dates in question and whether defendant Township had "policies and procedures relative to progressive discipline on the issue of timely arrival to work."

"A settlement agreement between parties to a lawsuit is a contract." Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) (citing Pascarella v. Bruck, 190 N.J. Super. 118, 124 (App. Div. 1983)). "It is well-settled that '[c]ourts enforce contracts "based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract."'" In re Cty. of Atl., 230 N.J. 237, 254 (2017) (alteration in original) (quoting Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014)). "A reviewing court must

consider contractual language 'in the context of the circumstances' at the time of drafting . . . ." Ibid. (quoting Sachau v. Sachau, 206 N.J. 1, 5-6 (2011)). Courts "should give contractual terms 'their plain and ordinary meaning,' unless specialized language is used peculiar to a particular trade, profession, or industry." Kieffer v. Best Buy, 205 N.J. 213, 223 (2009) (citations omitted).

Limiting discovery at this stage of the litigation was a misapplication of discretion. The court did not consider the intent of the parties, the express terms of the Agreement, surrounding circumstances or the underlying purpose of the contract before it determined that the Agreement did not permit a cause of action under CEPA or Pierce for new claims of retaliation that occurred after the Agreement was signed. Discovery was not permitted on these issues because the court determined the Agreement created a "clean slate" and then limited the parties to explore whether plaintiff was late and whether defendant Township had policies and procedures about lateness.[3]

Arguably, the scope of the Agreement might not extend to new acts of retaliation against plaintiff; it extend[ed] to "acts, events or omissions" that

---

[3] The clean slate apparently did not extend to plaintiff. Her termination from employment was based on progressive discipline that included instances of lateness, which occurred before the Agreement was signed and that plaintiff claimed, in the 2013 complaint, were examples of retaliation for whistleblowing.

A-0884-17T2

occurred <u>before</u> the settlement. Even the language in the Agreement "arising from" is preceded by the phrase "before the execution of this [A]greement" and that "includes" events "arising from" her employment. We take no position on the proper construction of the Agreement except to say that the court's order precluded discovery about it and that it also did not make appropriate findings and conclusions of law for our review. <u>See</u> <u>R.</u> 1:7-4(a).

The court granted defendants' unopposed motion for summary judgment and dismissed the 2016 complaint, finding there was no issue of fact that the plaintiff was late on two occasions. The problem was that discovery was not complete because it was limited by the court's order. It was error to grant summary judgment when discovery was not complete. <u>Velantzas v. Colgate-Palmolive Co.</u>, 109 N.J. 189, 193 (1988) (providing "it is especially inappropriate to grant summary judgment when discovery is incomplete"); <u>see also</u> <u>Driscoll Constr. Co. v. State</u>, 371 N.J. Super. 304, 318 (App. Div. 2004). Plaintiff should have had the opportunity to undertake further discovery that may have raised a "genuine issue [of] material fact." <u>R.</u> 4:46-2(c); <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 N.J. 520, 540 (1995). Such additional discovery is particularly important before granting summary judgment when a party's state of mind is at issue.

10

The court also misapplied its discretion by not adjourning the summary judgment motion so that plaintiff could retain new counsel. We review a court's decision denying an application for an adjournment for abuse of discretion. Kosmowski v. Atl. City Med. Ctr., 175 N.J. 568, 574 (2003). In deciding whether to reverse the trial court's decision, we consider all relevant factors, including the length of the delay, whether similar requests had previously been made and granted, the inconvenience to other parties and the court, whether denying the application would result in prejudice to the party seeking the adjournment, and the complexity of the case. State v. Hayes, 205 N.J. 522, 538 (2011).

In this case, the requested adjournment was thirty days, and the record did not show that there were earlier requests to adjourn. Defendants did not say how they would be prejudiced, but plaintiff clearly was prejudiced by the dismissal of her case "with prejudice" while her attorney could not affirmatively take a position on the motion. There would have been no prejudice in adjourning the motion for a limited period to give plaintiff the ability to retain new counsel.

Reversed and remanded. The complaint is reinstated. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0884-17T2