**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4310-18T3

IN THE MATTER OF CITY
OF ORANGE TOWNSHIP,

    Respondent-Appellant,

and

PBA LOCAL 89,

    Charging Party-Respondent.

_____

Submitted March 4, 2020 – Decided June 3, 2020

Before Judges Whipple, Gooden Brown and Mawla.

On appeal from the New Jersey Public Employment Relations Commission, P.E.R.C. No. 2019-40.

Scarinci & Hollenbeck LLC, attorneys for appellant (Ramon Emeterio Rivera, of counsel; John J.D. Burke, on the brief).

Detzky, Hunter & De Fillippo, LLC, attorneys for respondent (David John De Fillippo, of counsel and on the brief).

Christine R. Lucarelli, General Counsel, attorney for respondent New Jersey Public Employment Relations

Commission (John Andrew Boppert, Deputy General Counsel, on the statement in lieu of brief).

PER CURIAM

The City of Orange appeals from an April 25, 2019 final decision of the Public Employment Relations Commission (PERC), adopting the Hearing Examiner's finding that the City violated the New Jersey Employer-Employee Relations Act (EERA) when it adopted an ordinance that eliminated terminal leave to Policemen's Benevolent Association Local No. 89 (PBA) unit members on December 31, 2020.  We affirm.

The PBA "is the collective negotiations agent for all full[-]time police officers employed by the City . . . below the rank of Sergeant."  The City and the PBA are parties to a collective negotiation agreement (CNA) which expires on December 31, 2020.  Article V, Section 7 of the CNA provides for the payment of terminal leave based on the employee's accumulated sick leave.  Article V, Section 7 provides, in pertinent part:

(a) <u>Terminal Leave</u> –

<u>For employees hired before January 1, 1988.</u>

Upon ordinary retirement, or disability retirement, if an employee has accumulated sick leave to his credit, said employee shall opt for payment at the rate of 70% for all accumulated sick days or for compensation in time-off up to one (1) year or in cash,

(which may be paid in a lump sum or in payments over time at the employee's option) at the rate of pay in effect at the date of retirement according to the following formula:

| Amount of Accumulated Sick Leave | Compensation |
|---|---|
| 1 through 126 days | 1 day's pay or leave for each day of accumulated sick leave |
| 127 days or more | 1 day's pay or leave for each day of accumulated sick leave to 126 days plus 20% of a day's pay or leave for each day of accumulated sick leave in excess of 126 days. |

An employee who avails himself of the time-off option will be paid for the remaining days in excess of 1 year according to the preceding schedule.

Under Section 7, employees hired between January 1, 1988 and May 31, 1995, are entitled to the same terminal leave payment options as employees hired prior to January 1, 1998, except the formula for calculation is adjusted as follows:

| Amount of Accumulated Sick Leave | Compensation |
|---|---|
| 1 through 96 days inclusive | 1 day's pay or leave for each day of accumulated sick leave not to |

3

> exceed ninety-six
> (96) days in total.

Employees hired after May 1, 1995 "shall receive payment at the rate of 70% for all accumulated sick days." The CNA remains in full force and effect beyond the date of expiration set forth during collective bargaining negotiation between the parties.

On November 8, 2017, without prior negotiations with the PBA, the City adopted Ordinance No. 63-2017. The ordinance provided in relevant part:

> AN ORDINANCE TO AMEND TITLE 23 CITY OF ORANGE TOWNSHIP EMPLOYEE HANDBOOK OF PERSONNEL POLICIES AND PROCEDURES, CHAPTER V-UNUSED SICK LEAVE AND TERMINAL LEAVE FOR THE CITY OF ORANGE TOWNSHIP POLICE, FIRE, AND NON-UNIFORMED WORKERS OF THE CODE OF THE CITY OF ORANGE TOWNSHIP PERTAINING TO UNUSED SICK LEAVE AND TERMINAL LEAVE.
>
> . . . .
>
> 23:1-5.4 UNUSED SICK LEAVE AND TERMINAL LEAVE.
>
> All employees who have accumulated more than $12,000 worth of sick leave as of December 31, 2020 cannot accumulate additional time and the dollar value ($12,000) is frozen in place and cannot be increased. This does not affect the accrual of sick leave days that are earned; it only caps the amount of cash received at retirement.

There shall be no accumulated sick leave payment for employees who resign, die, or are terminated beyond December 31, 2020.

Terminal Leave for Members of OMEBA,[1] the Police and Fire Departments.

At the expiration of the current collective bargaining agreements, or December 31, 2020, whichever is later, unless already agreed to in an existing Collective Bargaining Agreement, the terms of this Ordinance must apply as follows: there will be no terminal leave payout for accumulated unused sick leave.

Terminal Leave for OMEBA Members- In accordance with their current collective bargaining unit agreement.

. . . .

EFFECTIVE DATE.

This Ordinance Shall take effect twenty (20) days after final reading and passage.

On January 22, 2018, the PBA filed an unfair practice charge against the City, seeking to compel the city to rescind or amend the Ordinance. The charge

---

[1] As noted by the Hearing Examiner,"[w]hile not described in the Ordinance, the 'OMEBA' stands for the 'Orange Municipal Employees Benevolent Association.'"

alleged that the City violated section 5.4(a)(1), (2), (3), (5), and (7)[2] of the EERA, when it adopted the ordinance. On July 19, 2018, the Acting Director of Unfair Practices issued a complaint and notice of prehearing. In September 2018, the PBA moved for summary judgment, which the City opposed and cross-moved for summary judgment.

The Hearing Examiner issued a report and recommendation, granting the PBA's motion concluding the City violated N.J.S.A. 34:13A-5.4(a)(5) and derivatively (a)(1) of the EERA when it adopted the ordinance "without negotiating in good faith with the PBA over changes to the provision of terminal leave."

The City filed exceptions on December 21 to the Hearing Examiner's report and recommendation. On April 25, 2019, PERC issued its decision

---

[2] Under those provisions, a public employer is prohibited from: (1) "[i]nterfering with, restraining or coercing employees in the exercise of the rights guaranteed to them by" the EERA; (2) "[d]ominating or interfering with the formation, existence or administration of any employee organization"; (3) "[d]iscriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage employees in the exercise of the rights guaranteed to them by" the EERA; (5) "[r]efusing to negotiate in good faith with a majority representative of employees in an appropriate unit concerning terms and conditions of employment of employees in that unit, or refusing to process grievances presented by the majority representative"; and (7) "[v]iolating any of the rules and regulations established by the commission."

A-4310-18T3

adopting the Hearing Examiner's recommended conclusions of law. This appeal followed.

On appeal, the City argues PERC's interpretation of the ordinance's operation is arbitrary and capricious for the following reasons: (1) PERC's characterization of the ordinance as a change in the existing terms and conditions of employment is unreasonable as the ordinance does not change the terms and conditions of employment unless one is negotiated as part of the next CNA; (2) PERC made no finding in its decision that the City refused to negotiate and therefore, PERC's conclusion that the City violated section 5.4(a)(5) of the EERA is without fair support in evidence; and (3) PERC's decision that the City imposed an unspecified condition upon negotiations has no rational basis. The City also contends PERC disregarded an explicit section heading, "Terminal Leave for Members of OMEBA," set forth in the ordinance. We disagree.

"PERC is charged with administering the [EERA] . . . and its interpretation of the [EERA] is entitled to substantial deference." Commc'ns Workers of Am., Local 1034 v. N.J. State Policemen's Benevolent Ass'n, Local 203, 412 N.J. Super. 286, 291 (App. Div. 2010) (citation omitted). We "will not upset a State agency's determination in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in evidence, or that it

violated a legislative policy expressed or implicit in the governing statute." Ibid. (citation omitted). We also "grant administrative agency action a 'strong presumption of reasonableness.'" Twp of Franklin v. Franklin Twp. PBA Local 154, 424 N.J. Super. 369, 377 (App. Div. 2012).

Although PERC's "'interpretation of the statute it is charged with administering . . . is entitled to great weight,' . . . [we] will not yield to PERC if its interpretation is 'plainly unreasonable, contrary to the language of the Act, or subversive of the Legislature's intent.'" Commc'ns Workers of Am., 412 N.J. Super. at 291 (citation omitted). "Deference is not afforded when PERC's interpretation gives a provision of the [EERA] greater reach than the Legislature intended, . . . and no special deference is owed in an interpretation of a statute outside the agency's charge." Twp. of Franklin, 424 N.J. Super. at 378 (citations omitted).

"The established rules of statutory construction govern the interpretation of a municipal ordinance." Twp. of Pennsauken v. Schad, 160 N.J. 156, 170 (1999) (citations omitted). "Those principles require that an ordinance should be interpreted to 'effectuate the legislative intent in light of the language used and the objects sought to be achieved.'" Ibid. (quoting Merin v. Maglaki, 126 N.J. 430, 435 (1992)). We start with considering the language of the ordinance.

"When the language of the ordinance is clear and unambiguous on its face, we need not look beyond the literal dictates of the words to divine the legislative intent." Kim Real Estate Enters. v. N. Bergen, 215 N.J. Super. 255, 258 (App. Div. 1987). In interpreting ordinances, we are guided by the assumption that the Legislature did not implement "any unnecessary or meaningless language," and therefore, "[w]e must presume that every word in a statute has meaning and is not mere surplusage." Jersey Cent. Power & Light Co. v. Melcar Utility Co., 212 N.J. 576, 587 (2013) (citation omitted).

Applying those principles, we discern no error in PERC's adoption of the Hearing Examiner's conclusion that the ordinance eliminates terminal leave for PBA members if no CNA is in place by December 31, 2020. The Hearing Examiner reasoned:

> This interpretation gives effect and meaning to each word in the above-quoted portion of the Ordinance. The "current collective bargaining agreement" is the 2010-2020 CNA, which is set to expire on December 31, 2020 and provides for terminal leave. The Ordinance clearly eliminates the payment of terminal leave by providing "there will be no terminal leave payout for accumulated unused sick leave," unless "an existing Collective Bargaining Agreement" has been reached. The language, "existing Collective Agreement" must refer to a successor CNA to the 2010-2020 CNA that would provide for terminal leave. The City's interpretation would conflate "existing Collective Bargaining Agreement" with the "current

collective bargaining agreement" and thus render the former clause superfluous. The City's interpretation would also not give effect to the language prohibiting the payment of terminal leave since, in its view, the expired CNA (which provides terminal leave) would continue to exist beyond December 31, 2020 regardless of whether parties reached a successor agreement.

This is consistent with the plain language of the ordinance and complies with our bedrock assumption that the Legislature did not use any unnecessary or meaningless language. The City's assertion that the ordinance simply announced its intention to negotiate the issue, contradicts the unambiguous language of the ordinance. The ordinance plainly states: "unless already agreed to . . . there will be no terminal leave payout for accumulated unused sick leave." The language leaves no doubt as to the status of terminal leave absent an agreement. We turn to whether the adoption of the ordinance violated sections 5.4(a)(5) and (a)(1) of the EERA.

Having reviewed the record and considered PERC's unique ability to reach such determinations, there is no basis to conclude PERC's decision, that the City's adoption of Ordinance No. 63-2017 violated section 5.4(a)(5) and, derivatively, (a)(1) of the EERA, was arbitrary capricious or unreasonable or that it lacked fair support in the record.

"The EERA affords public employees a vast array of rights, including the ability to appoint a majority representative to represent their interests and negotiate agreements on their behalf with an employer." In re Cty. of Atlantic, 230 N.J. 237, 252 (2017) (citing N.J.S.A. 34:13A-5.3). The EERA also provides that "[p]roposed new rules or modifications of existing rules governing working conditions shall be negotiated with the majority representative before they are established." Ibid. (quoting N.J.S.A. 34:13A-5.3). Thus, employers are prohibited from "unilaterally altering . . . mandatory bargaining topics, whether established by expired contract or by past practice, without first bargaining to impasse." Ibid. (citation omitted).

Further, the EERA prohibits employers from "[i]interfering with, restraining or coercing employees in the exercise of the rights guaranteed to them . . .," N.J.S.A. 34:13A-5.4(a)(1), and "[r]efusing to negotiate in good faith with a majority representative of employees in an appropriate unit concerning terms and conditions of employment of employees in that unit . . .," N.J.S.A. 34:13A-5.4(a)(5).

The City does not dispute terminal leave is, in general, a mandatorily negotiable term and condition of employment. See Caponegro v. State Operated Sch. Dist. of City of Newark, Essex Cty., 330 N.J. Super 148, 156 (App. Div.

11

2000) ("[A] contractual right to compensable accumulated leave is typically characterized as deferred compensation . . . [and] is not subject to unilateral divestment by the employer."). Therefore, when the City unilaterally adopted the ordinance, ultimately eliminating terminal leave for PBA unit members if no CNA is in place by December 31, 2020, it violated both section 5.4(a)(1) and (5) of the EERA.

Indeed, the ordinance has the effect of announcing a change of a negotiable term, which generally cannot be done absent prior negotiation. Moreover, the City's adoption of the ordinance, in effect, works contrary to the public policy of the EERA because it unilaterally discontinues a negotiable term and forces the PBA to negotiate for it back.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION